# SUPREME COURT OF TEXAS.

## GALVESTON TERM, 1887.*

### No. 2221.

#### JOHN J. FANT ET AL. v. THOMAS ELSBURY.

<div style="float:right">

| 68 | 1 |
|----|-----|
| 85 | 96 |
| 68 | 1 |
| 89 | 195 |

</div>

1. ASSIGNMENT FOR THE BENEFIT OF CREDITORS.—Every instrument, purporting to be a general assignment for the benefit of creditors, is governed as to its force and effect, the validity of its provisions, and the manner in which the trust created is to be administered, by the statute regulating assignments for the benefit of creditors. When the deed making such a general assignment is executed, the assignee becomes the officer of the law to administer the trust in obedience to the statute, regardless of any direction in the deed violative of its provisions.

2. SAME.—Such an instrument, which embraces two lists of the assignor's creditors, in which all creditors are included, containing a general description of all the debtor's property, and which provides for a more specific inventory to be afterwards made, creates a statutory and not a common law assignment. The failure to swear to the schedules, by whatever motive influenced, can not change the legal character of the instrument; nor will the failure of the assignee to give bond, or of the assignor to require one, remove the assignment from the operation and control of the statute.

3. SAME.—Though a clause in a deed of general assignment which attempts to give a preference in favor of particular creditors in the distribution of the property conveyed, is violative of the eighteenth section of the act regulating assignments, and is void, it does not invalidate the assignment. A general assignment for the benefit of all creditors being once made, the law, and not the wishes of the assignor, must govern in the distribution of the assets.

4. SAME—BOND OF ASSIGNEE.—When a deed of general assignment is executed, the title to the property conveyed vests in the assignee, for the purposes of the trust, under the directions of the statute. Should the assignee fail to execute the bond required by the law, creditors who do not complain and seek the appointment of another, in the manner designated by the statute, are liable at the suit of the assignee, for their seizure and appropriation of the assets.

---

*NOTE.—The Galveston cases reported in the first pages of this volume are reported out of their chronological order, and should have appeared with the cases of the Galveston term reported in 67 Texas Reports.

APPEAL from Harris.    Tried below before the Hon. James Masterson.

It may be stated, in addition to facts in the opinion, that Schedule A, referred to therein, gave a list of preferred debts aggregating twelve thousand three hundred and eleven dollars and twenty-six cents, and schedule B, attached to the deed of assignment, gave a list of the debts not preferred, amounting to one thousand five hundred dollars.   The debts mentioned in these two exhibits were all the debts owing by Dunn.   Under this deed of assignment Elsbury at once took possession of the property assigned, the greater part of which consisted of a stock of hardware in Houston, and proceeded to dispose of the goods at retail.

Elsbury gave no bond as assignee under the assignment.   At the time of the assignment Dunn was indebted to Louis Schwartz about six hundred dollars.   On the twentieth day of January, 1885, Schwartz brought suit for this indebtedness against Dunn, in the county court of Harris county, and caused an attachment in that suit to be issued and levied on a portion of the assigned goods then in Elsbury's possession under the assignment. Schwartz recovered judgment against Dunn and an order foreclosing the attachment lien on the goods, and ordering them to be sold to pay the judgment.   Under this judgment and order the goods levied on were sold by the sheriff, the goods bringing less than the amount of Schwartz's judgment, and the proceeds were applied on that judgment.

On January 21, 1885, Elsbury brought this suit in the district court of Harris county against the sheriff, Fant, who levied the attachment, and the sureties on his official bond, to recover the value of the goods levied on as stated, and in his petition alleged that his right to the goods was derived through the assignment.

The defendants demurred, generally and specially, and pleaded under oath that Elsbury had never accepted or qualified, as required by law, as assignee of Dunn, and that therefore he had no right or title to the goods for the value of which he sued, and no right to act as assignee.

Defendants also filed a general denial, and answered that the debts attempted to be preferred in the assignment were, at the time of the making of the assignment, unsecured debts, and not entitled to preference, and that the attempted preference was

illegal, fraudulent and void, and that therefore the assignment was fraudulent and void.

The answer also set up the facts above stated about the indebtedness of Dunn to Schwartz, and the attachment proceedings and judgment in Schwartz's favor, the sale of the goods and application of the proceeds of sale, and alleged that the same were regular, legal and rightful, and that plaintiff had no cause of action therefor.

Defendant's demurrers were overruled, and judgment rendered in favor of the plaintiff against the sheriff and his bondsmen for thirteen hundred and fifty dollars, as the value of the goods levied on and sold under attachment. From this judgment the defendants appealed.

*Jones & Garnett*, for appellants: On their proposition that the assignment on its face attempting to prefer a large number of creditors whose debts were unsecurred, was in direct violation of the statutes and void, and could confer no title on the assignee, cited sections 1 and 18 of the act regulating assignments for the benefit of creditors, Appendix to Revised Statutes, 5–8.

On their proposition to the effect that the plaintiff never having executed the statutory bond, could not maintain the action, they cited section 6 of chapter 56, pages 46, 47, acts of 1883; Martin et al. v. Hausman et al., 14 Federal Reporter, 160; Grubbs et al. v. Morris et al., Western Reporter, volume 1, number 5, page 185.

*W. P. Hamblen*, for appellee: On his proposition that whether the deed of trust from Dunn to Elsbury was made and intended as an assignment under the common' law or not, did not affect its validity, cited Stiles v. Hill, Fontaine & Co., 62 Texas, 430; LaBelle Wagon Works v. Tidball, Van Zandt & Co., 59 Texas, 291; Van Hook v. Walton, 28 Texas, 60.

On his proposition that whether or not the conveyance from Dunn to Elsbury was within the provisions regulating assignments passed in 1879, the sheriff, by levying an attachment on the property in Elsbury's possession, became a trespasser, and liable to Elsbury for the damage incurred, he cited Blum v. Welborne, 58 Texas, 157; Windham v. Petty & Matthews, 62 Texas, 492.

WILLIE, CHIEF JUSTICE. John J. Fant, as sheriff of Harris

county, levied a writ of attachment, issued in the suit of Louis Schwartz v. D. W. C. Dunn, upon a stock of goods found in the possession of Thomas Elsbury, and sold them in satisfaction of the debt for the recovery of which that suit was instituted. Elsbury brought this suit to recover of Fant and the sureties upon his official bond damages for the seizure of the goods, claiming them under a deed of assignment executed to him by Dunn for the benefit of the latter's creditors. This deed bore date June 21, 1884, and conveyed to Elsbury all the property of Dunn not exempt from execution upon the following trusts:

1. To take possession of the property conveyed, convert the same into money, and with the proceeds to pay the expenses of the trust, and all rents, taxes and assessments that it might be necessary to pay in order to protect the assigned property from sacrifice.

2. To pay the debts due, or to become due, which were designated in schedule A attached to the deed; and if the estate should not be sufficient to pay them all in full, then to pay them in the order in which they appeared in the exhibit as far as the assigned assets would go.

3: If anything remained after satisfying all the debts mentioned in schedule A, to apply it in payment of the debts mentioned in schedule B, also made part of the deed. If the residue should not be enough to pay these last debts in full, it was to be applied pro rata towards their payment.

4. The residue, if any remained after satisfying the debts in both schedules, to be returned to the assignor.

A description of the property assigned accompanied the deed, and the assignee was directed to prepare a detailed inventory of the same as early as practicable, and file it with the deed of assignment.

The schedule and inventory were not sworn to, and the assignee filed no bond as required by the amended act of April 2, 1883, regulating assignments for the benefit of creditors. (Laws of 1883, p. 46.)

The claim of Schwartz, upon which his attachment was based, was among the debts included in schedule A. The two schedules contained a list of all the creditors of Dunn, and those mentioned in schedule A had no preference over those in schedule B except such as was given by the assignment itself. The court below held the assignment valid at common law, and not in contravention of our statute regulating assignments for the

benefit of creditors, and that Elsbury, the assignee, was entitled to recover the value of the goods seized under the attachment, and rendered judgment accordingly. From this judgment Fant and his sureties have appealed to this court.

It is apparent from the face of the instrument, taken in connection with other proof introduced upon the trial, that it was intended as a general assignment of all the property of Dunn for the benefit of all his creditors, preferring some creditors over others in payment out of the proceeds of the assigned property.

The first question is: Can effect be given to this instrument in view of our statute regulating such general assignments? This statute provides that every assignment made by an insolvent debtor, or in contemplation of insolvency, for the benefit of his creditors, shall provide, except as herein otherwise provided, for a distribution of all his real and personal estate, other than that which is by law exempt from execution, among all his creditors in proportion to their respective claims, and however made or expressed, shall have the effect aforesaid, and shall be construed to pass all such estate, whether specified therein or not, and every assignment shall be proved or acknowledged and certified and recorded in the same manner as provided by law in conveyances of real estate or other property."

Subsequent sections of the statute provide, among other things, for obtaining a full and correct list of the assignor's creditors and the nature of their demands, as also a full statement of his assets; for the administration of those assets by an assignee, and for his qualification and for his removal and final discharge; fix the rights of creditors who consent to the assignment, and of those who do not, so far as the assigned property is concerned; provide remedies for frauds committed by either the assignor or assignee; and finally declare that any attempted preference of one or more creditors of the assignor shall be deemed fraudulent and without effect. The statute clearly intends—at least in every case of a general assignment for the benefit of creditors— to compel pro rata division of all the property of the assignor amongst all his creditors, to prevent the preference of one creditor over another, and to make the assignee responsible not only to the assignor, but to creditors for any mismanagement of the trust; and it lays down a plan or scheme by which these purposes are to be effected.

It is further apparent from the very terms of the law that no

general assignment for the benefit of creditors can be carried out and administered within this State except in the manner and subject to the limitations prescribed by the statute. So soon as the assignment is executed the statute takes in charge the administration of the assets, and, through the assignee, enforces their proper distribution amongst the consenting creditors of the assignor. The assignee is the hand and officer of the statute to execute its provisions, and the only power possessed by either the assignor or his creditors is to see that these provisions are obeyed by the assignee.

In order that the statute may govern in the execution of the trust, it is not necessary that the assignor should so state in the deed. The statute does not operate upon the assignment by reason of any request to that effect made by the grantee of the instrument, but because the statute itself says that every assignment for the benefit of creditors shall take effect and be executed according to its terms. All that is necessary is that the assignment be made for the benefit of creditors by an insolvent, or one contemplating insolvency, and the statute dictates everything requisite to be performed in order that the property conveyed may be distributed according to its own provisions, whether the assignor has so requested or not. Should the assignor prescribe a course to be pursued by the trustee different from that directed by the statute, his wishes would not be respected. Should he even request that the statute should have no effect in the administration of his assets, it would not avail. He can not suspend the statute in his own case, nor thwart the will of the Legislature, that a fair distribution of an insolvent's estate shall be secured by means which it deemed necessary and proper for that purpose. He can not substitute his own judgment for that of the law, however fairly and justly he may seem to be acting. The statute makes the execution of the assignment a submission to its provisions, which can not be modified or prevented by anything which may be said or done by the assignor, and hence takes charge of every such instrument, whether the maker intended it should or not. That the law does not respect the wishes of the assignor as to whether it shall control the terms of the assignment, and the manner in which the assigned property shall be administered, is apparent from the fact that it renders fruitless any attempt on his part to make an assignment for the benefit of creditors, and, at the same time, decline to include in it any part of his property, or any creditor, with certain excep-

tions contained in the statute itself. His intent in either case would be not to comply with the statute, yet the law gives the deed the same effect and administers the trust in the same manner as if the deed had in every respect conformed to statutory requirements.

It follows from what we have said that in our view, every instrument purporting to be a general assignment for the benefit of creditors, is governed as to its force and effect, the validity of its provisions, and the manner in which the trust created is to be administered, by the provisions of our statutes regulating assignments for the benefit of creditors.

The assignment in the present case was general. It conveyed to an assignee all of the assignor's property for the benefit of all his creditors. It came, therefore, fully within the description of the instrument mentioned in the statute. It contained two lists of the assignor's creditors, embracing them all. It purported to give a general description of his property, and provided for a more detailed inventory in the future. How then can it be said that it is a mere common law assignment, and not one contemplated by the statute? One reason given is that the schedules were not sworn to, as the statute requires. But the statute says that the want of such lists or inventories shall not vitiate the assignment. If the total want of schedules will not affect the assignment, we can not see how the want of an affidavit to them can have that effect. It might render the lists informal, or even worthless; but in the face of the express provision of the statute it can not change the nature of the assignment. It is still good under the statute, and as such must be executed. The failure to swear to the schedules may be evidence of the intention of the assignor that the assignment should not be governed by the act, but we have seen that his intention has no effect whatever upon the nature of the instrument and does not prevent the act from being applied to it.

It is further said that the failure of the assignee to give the bond required by the act takes the assignment out of its provisions. The contrary has been held by this court (Windham v. Patty, 62 Texas, 494) under the law of 1879; and in the amended act of 1883, section 6, it is expressly provided that the assignment shall take effect as against the assignor and his creditors, though the assignee should fail to execute and file a bond. Assignments are not vitiated for any failure of the assignee to perform his duty; but for this he is subjected to removal, and

the trust may be executed by another. It is not contemplated by the law that in order to give the assignment a statutory character the assignor shall require the assignee to give bond. This the statute provides shall take place after the assignment is made, and the assignor has no voice whatever in the matter.

We think, therefore, that the present assignment was valid under the statute, not as a common law assignment permitted to be made and administered without reference to the statute, but as a statutory assignment to take effect and be carried out according to the provisions of the statute. The present assignment preferred some creditors over others in the distribution of assets. In this respect it was in violation of the eighteenth section of the act, but this did not render it void. By the express terms of that section the attempted preference and not the assignment is avoided. The estate is still administered under the act, and is distributed among all creditors in proportion to their respective claims, notwithstanding the attempted preference. This has been held in reference to assignments containing provisions similar to those found in the first section of our statutes, though they contained none like those found in its eighteenth section. (Crow v. Beardsley, 68 Missouri, 435.) This latter section places the matter beyond all doubt, vitiating as it does the preference, but leaving the assignment in other respects in full force and effect.

But it is claimed that though the assignment may be valid under the statute, the assignee, Elsbury, had no right to bring this suit, for the reason that he had never given the bond required by the statute. The execution of the bond, it is said, is a condition precedent to his right to possess or recover any of the assets of the assignor. It is true that the statute says that upon filing the bond the assignee shall take possession of the assigned property and proceed to execute the trust. But what is the effect of his failure to take this preliminary step? The amended act of April 7, 1883, provides for exactly this state of case. If the assignee does not give the bond within five days after the delivery of the deed of assignment, the assignment nevertheless takes effect as against the assignor and his creditors; and upon the application of any of them, the county or district judge may appoint another assignee, who upon filing his bond takes possession of the property and executes the trust. The assignor and his creditors are the only parties who could object to the assignment, or to any default or misconduct of the assignee.

The statute declares it valid as to them though the assignee does not give bond, and points out the proper course for them to pursue to have the trust executed in such a case. They may have the estate administered by another trustee if they choose; but so long as they do not ask to have a new one appointed, they acquiesce in its administration by an unbonded assignee. At least no one of them has the right to take the property or any portion of it from the assignee, of whose failure to give bond he does not complain, in payment of his particular indebtedness. The deed has taken effect by its execution and delivery, and the title has passed to the assignee, subject to the right of the assignor or the creditors to prevent his taking possession of the property if he fails to give the proper bond. They express this objection by asking the judge to appoint another. If they do not object they permit the title to the assigned property to remain in the trustee in whom it was vested by the terms of the assignment. They at least can not object in any other way to the assignee collecting the assets for the purpose of having them administered for their benefit, when they have failed to express their dissatisfaction in the only manner pointed out by the statute. In this case one of the creditors took from the assignee, forcibly and without legal right, a portion of the assigned property, which he and his fellow creditors had allowed to remain with him for more than a year without bond, and without complaint. He could not deny the assignee a right which his own conduct and acquiescence had accorded him, and hence could not set up the failure to give bond as a reason why the assignee should not possess and recover the property. Whilst, therefore, we do not concur in the reasons given by the learned judge below for rendering judgment for the appellee, we think the judgment was correct, and it is is accordingly affirmed.

*Affirmed.*

Opinion delivered January 11, 1887.