### F. W. LOCHTE ET AL. v. LEON & H. BLUM.
#### No. 558.

1. **Parties—Suit by Some on Behalf of All.**—Where a sufficient number of persons alike interested with those who have not been made parties were before the court to represent the interests of all, the court properly overruled a motion to dismiss the cause for want of proper parties.

2. **Mortgage and Assignment Distinguished.**—A mortgage creates a specific lien on property; the equitable title, or right of redemption, remains in the grantor, and his interest is such as he may sell, or it may be sold under judicial process by other creditors, subject to the lien created by the mortgage; while an assignment is a transfer by a debtor of some or all of his property to an assignee in trust, to apply the same, or the proceeds thereof, to the payment of some or all of his debts, and return the surplus, if any, to the debtor.

3. **Assignment for Benefit of Creditors—Purpose of Statute.**—Where an assignment is made by an insolvent debtor, or in contemplation of insolvency, for the benefit of his creditors, the object of the statute is to compel a distribution of his estate among his creditors under its provisions.

4. **Same—Intention of Assignor Does Not Control.**—The statute makes the execution of an assignment a submission to its provisions, whether the assignor intended it so or not.

5. **Same—Attorney's Fee.**—Where a conveyance is executed intended to be a deed of trust preferring creditors according to three classes, and suit is brought by a creditor of the third class to have the same declared an assignment, the creditors of the first and second classes do not have to contribute to the attorney's fee allowed by the court, as the suit was not for their benefit.

APPEAL from Gillespie.   Tried below before Hon. W. M. ALLISON.

*A. O. Cooley* and *George C. Altgelt*, for appellants.—1.   All the beneficiaries under the instrument were necessary parties to the suit, and the court erred in proceeding to judgment without service on them or an appearance by them.   Hudson v. Eisenmayer, 79 Texas, 401; Hardware Co. v. Stove Co., 88 Texas, 468; Story Eq. Pl., secs. 207, 207a, 207b; Perry on Trusts, 872–885.

2.   Appellees having brought this suit for their own benefit and advantage, and in hostility to the deed, should not have been allowed their attorney's fees from the trust fund.   Kellogg v. Muller, 68 Texas, 183; McCart v. Maddox, 68 Texas, 456; Railway v. Ware, 74 Texas, 47.

*Scott, Levi & Smith*, for appellees.—The instrument was an assignment, and not a mortgage.   Padgitt v. Wood, 24 S. W. Rep., 1108; Schneider v. Bagley, 24 S. W. Rep., 1116; Bank v. Bank, 27 S. W. Rep., 848; Preston v. Carter, 80 Texas, 390; Foreman v. Burnette, 83 Texas, 402; Boyd v. Haynie, 83 Texas, 7; Johnson v. Robinson, 68 Texas, 399; Hart v. Blum, 76 Texas, 115; Briggs v. Davis, 21 N. Y., 574; Bonns v. Carter, 31 N. W. Rep., 386; Appellos v. Stamford, 22 S. W. Rep., 1060; Martin v. Hausman, 14 Fed. Rep., 160; Weil v. Polack, 30 Fed. Rep., 813; White v. Cotzhauzen, 129 U. S., 339; Cobbey on Chat. Mort., secs. 98, 101; Burr. on Assign., 6 ed., secs. 8, 105, 107, 111, 125; Wetzel v. Simon, 87 Texas, 403.

NEILL, ASSOCIATE JUSTICE.—This suit was originally brought by the appellees, for themselves and other creditors of C. F. Priess similarly situated who might see proper to come into the suit, against F. W. Lochte, for the purpose of having the conveyance from C. F. Priess to F. W. Lochte, set out in our conclusion of facts, declared a general statutory assignment; to enjoin the grantee from distributing the property transferred, or its proceeds, among the creditors sought by the instrument to be preferred; and to have the grantee file a bond as required by our statute governing assignments for the benefit of creditors, and in the event of his failure to file such bond, to have the court appoint an assignee, whose duty it should be to take charge of all the property transferred, dispose of it, and distribute its proceeds in accordance with the provision of the statutes regulating general assignments.   By an amended original petition, the parties who are named in the instrument as "first-class" and "second-class" creditors, or a representative number of them, were made parties defendant.

The court granted a temporary writ of injunction, which upon final hearing was perpetuated, and a decree entered declaring the instrument a general statutory assignment; removing F. W. Lochte as trustee, and appointing A. E. Schuchard, with directions to administer the property assigned in accordance with the statutes regulating general assignments, and to pay certain attorneys, who represented the appel-

lees (plaintiffs) in this suit, a fee of $600 out of the proceeds of said property.

From this judgment or decree this appeal is prosecuted.

*Conclusions of Fact.*—On the 20th of October, 1893, C. F. Priess executed and delivered to Frederick W. Lochte the following instrument of writing, to wit:

"THE STATE OF TEXAS, }
"County of Gillespie.  }

"Know all men by these presents, that I, C. F. Priess, of the county of Gillespie and State of Texas, for and in consideration of the sum of ten dollars to me paid by Frederick W. Lochte, of the same place, and for further consideration hereinafter expressed, have granted, sold, conveyed, and confirmed, and do hereby grant, sell, convey, and confirm unto the said Frederick W. Lochte, and to his successors in this trust, all of the following described property, real, personal, and otherwise, viz:"

[Here follows the description of property set out in items 1 to 16, inclusive, of the instrument, comprising a number of tracts of land, town lots, shares of stock, and an interest in a stock of cattle.]

"17.  Also my entire stock of goods, wares, and merchandise, comprising dry goods, groceries, hardware, and all other articles of every description, and fixtures pertaining to my mercantile business now on hand and about my storehouse and storage rooms, situated on town lot number 180, in town of Fredericksburg, Gillespie County, Texas, and all wagons, mower, and other vehicles and utensils now in my possession, except such as belong to the Lone Star Brewing Company, or are exempt from forced sale.

"18.  And also all of my account books, accounts, and promissory notes, and all claims for money due me, or to which I may become entitled by judgments, promissory notes, accounts, or contracts now existing:

"To have and to hold all and singular the above described property and claims, together with all rights and appurtenances thereto belonging, unto the said Frederick W. Lochte, and unto his successor, if any, as herein provided for, forever.

"In trust, however, for the purpose of securing and effecting early payment of all my just debts, due to persons named, with amounts due each, and with preference in favor of my said creditors, by classes and in order of classification as hereinafter specified and provided. And my said trustee, if any time is unable or unwilling to fully execute this trust, is hereby authorized and required to appoint some proper person or persons to succeed as trustee or trustees, to act in his place, and such successor or successors shall have the same powers and duties that said original trustee has by virtue of this conveyance. And in executing this trust, it is provided and required that said

trustee, or successor, shall own, hold, and take care of the property and all claims hereby conveyed, and he shall, as expeditiously as may be practicable, sell for cash all of said property, both real and personal, and collect all of said claims, and that on sales and collections he shall execute and deliver due deeds and acquittances, and that when he has funds on hand, after payment of current expenses of executing this trust, including taxes, wages, and fees of agents and attorneys (if any), and retaining due commissions, he, said trustee, shall first pay in full or pro rata, as able, my preferred creditors, whose names with amount due each, here follow under head of first class."

[Here follows the names of thirty-seven creditors and the several sums due them, amounting in the aggregate to $22,321.40.]

"And further, said trustee, or successor, after having fully paid all just claims of said 'first-class' creditors, and having funds on hand, shall promptly pay pro rata or in full, as he may be able, my next class of preferred creditors, whose names, with amount due each, here follow under head of second class."

[Here follows the names of forty-two creditors and the several sums due them, amounting in the aggregate to $28,057.52.]

"And further, said trustee, or successor, after having fully paid all just claims of said 'second-class' creditors, as aforesaid, together with all expenses of executing this trust, and having further funds on hand, shall then promptly pay in manner as aforesaid, pro rata and in full, as he may be able, my next class of creditors, whose names, with the amount due to each of them, here follow under head of third class, viz:"

[Here follows the names of thirty-two creditors and the sums due them respectively, amounting in the aggregate to $16,406.76.]

"And further, the said trustee, or his successor, after having paid in full all just claims of said 'third-class' creditors, as aforesaid, together with all expenses, fees, and commissions occasioned in execution of this trust, and still having trust funds in his hands, shall then pay any and all other just debts of mine that may exist, and in case any of said property or proceeds of sale thereof still remain undisposed of, then the same shall be, by said trustee or successor, reconveyed and delivered to me or to my order. And I hereby ratify and confirm all that my trustee, or successor, may lawfully do in the premises.

"In testimony whereof, I have hereunto subscribed my name, at said county of Gillespie, this 20th day of October, A. D. 1893.

[Signed] "C. F. PRIESS."

The above instrument was duly acknowledged and filed for record in the office of the county clerk of Gillespie County, on the day it was executed. When the conveyance was executed, C. F. Priess was indebted to divers parties in about the sum of $65,000, a large amount of which was past due, and could not be paid by him in the ordinary course of his business. His indebtedness on the 28th of October, 1893,

exceeded the total value of his entire assets. And when he executed the instrument he was insolvent, and intended thereby to convey all his property, not exempt from execution, to Lochte, for the payment of all his debts; but, by inadvertence, real estate belonging to him of the probable value of $2000 was omitted from and not expressly conveyed by the instrument. Immediately upon the execution of the conveyance, F. W. Lochte, by virtue thereof, took possession of the stock of goods, wares, and merchandise, notes, accounts, and all other property so conveyed to him, and proceeded in the execution of said instrument as if it was a deed of trust preferring creditors in the order therein named, never having executed the statutory bond as assignee.

*Conclusions of Law.*—There was no error in the court's overruling appellants' motion to dismiss the cause for want of proper parties. A sufficient number of persons alike interested with those who had not been made parties, were parties and before the court to represent the interest of all. Hawes on Parties to Actions, sec. 19; 2 Perry on Trusts, sec. 885.

Appellants' third assignment of error, which complains of the court's admitting evidence for the purpose of showing that at the time the conveyance was made Priess was insolvent, and that the instrument conveyed substantially all the property owned by himself at the time it was executed, is not well taken. Freeman v. Burnette, 83 Texas, 403; Coffin v. Douglass, 61 Texas, 409; McIlhenny Co. v. Miller, 68 Texas, 358. The opinion in Stedman v. Dobbins, 24 Southwestern Reporter, 1135, cited by appellant in support of his proposition under this assignment, wherein it is held that the court will not look outside the four corners of the instrument to determine whether or not it is a general assignment, is by the Supreme Court of Tennessee; and the principle enunciated, though well established in that State and some others, has, in its application to assignments, found no recognition by the Supreme Court of Texas.

It is argued by the appellant that the instrument in question is a mortgage, or, what is the same thing, a deed of trust to secure debts. A mortgage creates a specific lien on the property; the equitable title (and in this State the legal as well), or right of redemption, remains in the grantor, and his estate or interest in the property is such as he may sell, or may be seized and sold under judicial process by his other creditors, subject to the lien created by the mortgage.

An assignment for the benefit of creditors is defined to be "a transfer by a debtor of some or all of his property to an assignee in trust, to apply the same, or the proceeds thereof, to the payment of some or all of his debts, and return the surplus, if any, to the debtor." Burr. on Assign., sec. 2. It is absolute, unconditional, and indefeasible; and by it the grantor parts absolutely with the title, which rests in the grantee unconditionally, for the purpose of the trust.

"Every assignment made by an insolvent debtor, or in contempla-
tion of insolvency for the benefit of his creditors, shall provide, except
as hereinafter provided, for a distribution of all his real and personal
estate, other than that which is by law exempt from execution, among
all his creditors' in proportion to their respective claims; and however
made and expressed shall have the effect aforesaid, and shall be con-
strued to pass all such estate, whether specified therein or not; and
every assignment shall be proved or acknowledged and certified and
recorded in the same manner as provided by law in conveyances of
real estate or other property." Sayles' Civ. Stats., art. 65a.

The object of the statute, when such an assignment is made (i. e.,
"any assignment made by an insolvent debtor, or in contemplation of
insolvency for the benefit of his creditors"), is to compel a distribu-
tion of the proceeds of all the assignee's estate, real and personal, sub-
ject to the payment of debts among his creditors under its provisions.
Johnson v. Robinson, 68 Texas, 399; Fant v. Elsbury, 68 Texas, 1;
McCart v. Maddox, 58 Texas, 459; McIlhenny Co. v. Craddock, 68
Texas, 359; Preston v. Carter, 80 Texas, 390; Foreman v. Burnette,
83 Texas, 396.

In the case of Fant v. Elsbury, supra, where the instrument in
question provided, that "the residue, if any remained after satisfying
the debts, * * * be returned to the assignor," and which was
held an assignment, the Supreme Court says: "All that is necessary
is that the assignment be made for the benefit of creditors by an in-
solvent, or one contemplating insolvency, and the statute dictates
everything requisite to be performed in order that the property con-
veyed may be distributed according to its own provisions, whether
the assignor has so requested or not. Should the assignor prescribe a
course to be pursued by the trustee different from that dictated by the
statute, his wishes would not be respected. Should he even request
that the statute should have no effect in the administration of his as-
sets, it would not avail. He can not suspend the statute in his own
case, nor thwart the will of the Legislature, that a fair distribution
of an insolvent's estate shall be secured by means which it deemed
necessary and proper for that purpose. He can not substitute his own
judgment for that of the law, however fairly and justly he may seem
to be acting. The statute makes the execution of the assignment a
submission to its provisions, which can not be modified or prevented
by anything which may be said or done by the assignor, and hence
takes charge of every such instrument, whether the maker intended it
should or not. That the law does not respect the wishes of the as-
signor as to whether it shall control the terms of the assignment, and
the manner in which the assigned property shall be administered, is
apparent from the fact that it renders fruitless any attempt on his
part to make an assignment for the benefit of creditors, and at the
same time decline to include in it any part of his property or any
creditor."

We have already seen that the facts of insolvency and that the grantor conveyed substantially all the property owned by him, need not appear from the face of the conveyance, and that the evidence was sufficient to establish such facts. The instrument upon its face shows that it was made for the benefit of all the grantor's creditors. The only question then remaining is, is the instrument in question an assignment? If upon consideration of the question an affirmative answer should be given, the judgment of the District Court must be upheld; for we will then have an "assignment made by an insolvent debtor, for the benefit of his creditors," which the statute requires "shall provide * * * for a distribution of all the debtor's real and personal estate * * * among his creditors, in proportion to their respective claims," and says, "shall be construed to pass all such estate whether specified therein or not." If it is such an assignment, by giving the required effect to the statute, all his property not exempt from execution passed to the assignee, regardless of whether the debtor intended it or not. Even property conveyed or transferred by the assignor previous to and in contemplation of the assignment, with the intent or design to defeat, delay, or defraud creditors, or to give preference to one creditor over another, passes to the assignee by the assignment. Sayles' Civ. Stats., art. 656.

It seems to us that the terms of the instrument under consideration bring it within the definition of an assignment quoted. There is no defeasance clause; it provides that the "trustee *shall* own, hold, and take care of the property * * * conveyed, and as expeditiously as may be practicable sell for cash all of said property, both real and personal, and collect all of said claims, and that on sales and collections he shall execute and deliver due deeds and acquittances; and that when he has such funds on hand, after payment of current expenses of executing the trust, including taxes, wages, * * * he, the trustee, shall first pay in full or pro rata, as able, the grantee's preferred creditors," etc. By these terms it seems to convey the property absolutely for the purpose of raising a fund to pay his debt, and to pass the absolute title, legal and equitable, of the grantor, and to place it beyond his reach as well as his creditors' until the purposes of the trust is satisfied—that is, until all his debts are paid in the order and manner provided by the instrument. If he was insolvent, as we have found—his debts being in excess of the value of all his property—there could hardly be a residue or surplus of property, or of the proceeds of its sale, if all the debts were paid. And it is still more improbable that an insolvent who has parted with the control and ownership of all his property, save such as is exempt, would, outside of such property, raise money sufficient to pay and discharge an indebtedness of $65,000. But if either of these improbabilities should become a fact, none of the property conveyed, nor the proceeds of its sale, would, by the terms of the instrument, ipso facto revest in the grantor; for the instrument requires, that in case any of said property

or proceeds of sale thereof shall remain undisposed of, the trustee or successor shall reconvey and deliver the same to the grantor or his order. The words, "In trust, however, for the purpose of securing and effecting early payment of all my just debts," etc., as they appear in the instrument, show the intention of the grantor to appropriate the property to the payment of his debts, and the use of the word "securing" in that connection does not show a different intention, nor constitute the instrument a mortgage. To say that such word as it appears in the context stamps the instrument as a mortgage, would be to ignore the obvious meaning and purposes of the entire writing, and make its construction turn upon a single word, without giving effect to others, which were clearly intended to show the intention of the grantor, and which characterize it as an assignment and distinguish it from a mortgage. It has been held, that a clause in an instrument stating that it is not intended to operate as an assignment, but a chattel mortgage, is of no force, and does not change its legal effect. "If," says the court, "such could control, all a debtor would have to do when he made an assignment would be to insert a clause that it was intended as a mortgage, and the law regulating assignments would be effectually invaded." Schneider v. Bagley, 24 S. W. Rep., 1117.

It seems to us incomprehensible that an instrument by which all of an insolvent's property is transferred for the purpose of paying all his debts, can be withdrawn from the operation of the statute. In such case, it certainly was not the intention of the Legislature to permit the insolvent to determine its character, by the use of language indicative of his design to have it deemed a mortgage, and to thereby authorize preferences. To use the language of the Supreme Court in McCart v. Maddox, supra, "We are clearly of opinion that the object of the Act of 1879 was not to invalidate assignments made by insolvent debtors, but to bring them all, so far as practicable, within its operation, and to administer the property and distribute the proceeds according to its requirements."

We have stated how the instrument appears to us, and shown that, in our opinion, it possesses all the features which until recently were held by the Supreme Court and Courts of Civil Appeals to distinguish it from a mortgage and characterize it as an assignment under our statute. But the case of Tittle v. Vanleer, decided by the Supreme Court on the 25th of last February, has caused us to doubt whether an instrument which we would have before unhesitatingly pronounced, in the light of prior decisions, an assignment under the statute, should not, in view of the opinion referred to, now be pronounced a mortgage; for it would seem that if the instrument in that case is a mortgage, the one in this case would be construed to be one also. The instrument in that case was a conveyance by insolvent debtors of all their property to a trustee, on a trust which required him to take actual and exclusive possession and control of it and sell it in such a manner as he might deem best, and to apply the proceeds of sale to the payment of

all their debts.    There was no clause of defeasance expressed in the instrument, nor was there any evidence to show that a defeasance was contemplated by the parties.    True, the instrument provided, that if after the payment of all the grantor's debts there should be any surplus the trustee should pay one-half of it to each of them.    This is always contemplated by an assignment, as is shown from the definition quoted.    The provision was nothing more than the law would require without such provision in the instrument.    Hoffman v. Mackall, 5 Ohio St., 135; Hall v. Denison, 17 Vt., 311.    If all their debts were paid, as required, there would be no creditors to subject the surplus to their debts.    Besides, as the grantors were insolvent, a surplus was improbable.    Stress, however, is laid by the associate justice who delivered the opinion upon the fact that the instrument provided for return of the surplus, and upon the further fact, that the instrument authorized the trustee to sell and make deed *in name of grantors*.    It would have seemed to us, as the instrument conveyed the property to the trustee, that he could have upon its sale made the deed in his own name, notwithstanding such authority.    However this may be, these two provisions are the only ones pointed out in the instrument as the features which characterize it as a mortgage; and as they do not appear in the one under consideration, we are constrained by our understanding of the law to hold it an assignment under the statute, and that the court below did not err in so holding.    Our Supreme Court has, in a recent opinion, expressed doubt as to the soundness of the rule applied in Tittle v. Vanleer, but declines to vary from it at this time because of earlier decisions wherein that rule was expressed, which therefore has become a rule of property.    Adams v. Bateman (not published).    In view of the ruling in Fant v. Elsbury, 68 Texas, 1, which was made since those referred to by the Supreme Court in the case of Tittle v. Vanleer, it seems that the rule now applied by us can more properly, or as well, be said to be the accepted rule on this subject.    The case of Fant v. Elsbury must be overruled to admit of the test applied in Tittle v. Vanleer.

We are of the opinion that the confusion which prevails on this subject would have been avoided by following the plain terms of the statute.    The nature of an instrument under our statute should not be determined by a clause providing for a return of any balance remaining after the sale, nor by the defeasance, but whenever it appears that a person is insolvent or contemplates insolvency, and transfers all of his property for the benefit of all his creditors, the conveyance should be declared an assignment under the statute, regardless of its form.    The application of this rule, the one demanded by the statute, is simple, and removes all obscurity on the subject.    Our opinion is in consonance with the statute and the decisions upholding it.    McCart v. Maddox, 68 Texas, 459.

The suit was not for the benefit of those designated in the deed of assignment as "first-class" and "second-class" creditors, but was ad-

verse to them; and, on principle, we do not think their interest in the funds in the trustee's hands should be charged with an attorney's fee in favor of the lawyers who instituted and prosecuted this suit; but, as the suit was prosecuted in the interest of all the parties designated in the instrument as "third-class" creditors, it is equitable that their interest in the trust fund should be charged with such attorney's fee.

Therefore the judgment of the District Court will be so modified as to require the trustee to pay the attorney's fee of $600 allowed by the court out of the funds in his hands belonging to the several creditors designated as "third-class"—the amount taken from the share of each in the fund to be proportioned according to his several interest in such funds.

The costs of this appeal will be adjudged against those designated in the deed of assignment as first and second-class creditors, and assessed against their interest in the fund in the hands of the trustee.

The judgment of the District Court, as modified, is affirmed.

*Modified and affirmed.*

Delivered April 10, 1895.