**Kenneth BARNES and Thomas Lindsey, Appellants,**

v.

**LPP MORTGAGE, LTD., Appellee.**

**No. 05–10–00605–CV.**

Court of Appeals of Texas, Dallas.

July 12, 2011.

Rehearing Overruled Feb. 22, 2012.

Charles W. McGarry, Law Office of Charles McGarry, Dallas, TX, for Appellant.

Baxter W. Banowsky, Banowsky Betz & Levine, P.C., Dallas, TX, for Appellee.

Before Justices O'NEILL, FRANCIS, and MYERS.

## OPINION

Opinion By Justice O'NEILL.

Appellants Kenneth Barnes and Thomas Lindsey guaranteed two loans from the Small Business Administration (SBA) to Antonio's Incorporated. Appellee LPP Mortgage, Ltd. purchased one of the two loans and filed suit against Barnes and Lindsey to collect on the guaranties. Barnes and Lindsey appeal the trial court's grant of summary judgment to LPP. We affirm the trial court's judgment.

### BACKGROUND

The SBA made a disaster loan in the principal amount of $60,500 to Antonio's Incorporated after a tornado damaged a building owned by the corporation. Barnes and Lindsey, who had formed Antonio's to operate a restaurant, guaranteed the loan. The loan was evidenced by a note dated April 26, 1997, payable in monthly installments of principal and interest beginning in September, 1997, with payment of the balance in ten years. Antonio's did not make any payments on the loan after January of 1999.

LPP purchased the note in 2000, and filed suit in 2009 to collect on appellees' personal guaranties. Appellants moved for summary judgment on the ground that the statute of limitations had run. LPP filed a cross-motion for summary judgment. The trial court denied both motions, but ruled that a six-year statute of limitations applied. LPP filed a second motion for summary judgment, seeking a reduced amount of damages based on the trial court's limitations ruling. Appellants reurged their motion for summary judgment. The trial court granted LPP's motion and denied appellants' motion. This appeal followed.

### STANDARD OF REVIEW

The standard of review for summary judgments is well-settled. A party moving for summary judgment must con-

clusively prove all elements of its cause of action or defense as a matter of law. Tex.R. Civ. P. 166a(c); *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex.2001). When both sides move for summary judgment and the trial court grants one motion but denies the other, the reviewing court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Holy Cross Church,* 44 S.W.3d at 566 (citing *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000)). A party moving for summary judgment on limitations grounds must prove when the cause of action accrued. *Id.* (citing *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990)).

### Discussion

In two issues, appellants contend the trial court erred in granting summary judgment for LPP and denying appellants' summary judgment motion. In the alternative, appellants contend that there are genuine issues of material fact to be resolved on appellants' limitations and laches defenses and on the amount of damages and attorney's fees recoverable. We first address whether LPP's claims were barred by limitations.

### A. Applicable statute of limitations

▮ The trial court determined that "the six-year statute of limitations found in 28 USCS § 2415(a) applies to the underlying SBA loan to Antonio's, Inc." Appellants argue the six-year statute of limitations set forth in 28 U.S.C. § 2415(a) is limited by its terms to suits "brought by the United States or an officer or agency thereof." Because LPP now owns the loan, not the SBA, appellants argue the statute of limitations in section 2415(a) does not apply.

The issue of whether purchasers of notes from a federal agency may obtain the benefit of the federal statute of limitations was considered by the Texas Supreme Court in *Jackson v. Thweatt,* 883 S.W.2d 171 (Tex.1994), and *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562 (Tex.2001). In *Jackson,* the court held that purchasers of notes from the Federal Deposit Insurance Corporation (FDIC) obtained the benefit of the federal six-year limitations period to bring suit on the notes. *Jackson,* 883 S.W.2d at 172; *see also Cadle Co. v. Weaver,* 883 S.W.2d 179, 179 (Tex.1994) (per curiam), *and EKA Liquidators v. Phillips,* 883 S.W.2d 178, 178 (Tex.1994) (per curiam) (both reversals of our affirmance of summary judgments on limitations grounds on same day as *Jackson,* where case presented same question resolved in *Jackson* ). The court reasoned that the assignee "stands in the shoes of the assignor," and there was a "strong policy rationale" to preserve the market value of assets in the hands of the FDIC. *See id.* at 174–175.[1]

---

1. *Jackson* was decided under 12 U.S.C. § 1821(d)(14), a six-year limitations period enacted in 1989 as part of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA). *Jackson,* 883 S.W.2d at 173. As explained by the *Jackson* court, before 1989, claims brought by the FDIC were brought under the six-year limitations period applicable to the federal government generally, found in 28 U.S.C. § 2415(a), the statutory provision at issue in this case. *Jackson,* 883 S.W.2d at 173 n. 3. Section 1821(d)(14) of FIRREA resolved the issue of when the six-

year limitations period began to run, and allowed the FDIC to take advantage of state statutes of limitation if they were longer than six years. *Id.* While cases involving the SBA fall under section 2415 rather than FIRREA, courts have applied similar principles in considering whether assignees may obtain the benefit of federal statutes of limitation. *See, e.g., Stephens v. LPP Mortgage, Ltd.,* 316 S.W.3d 742, (Tex.App.-Austin 2010, pet. denied) (regarding deed of trust acquired from SBA) ("As a general rule, when a federal

In *Holy Cross Church*, however, the court held that the FDIC's successors could not obtain the benefit of the federal statute of limitations if the note was not in default until after the FDIC transferred it. *Holy Cross Church*, 44 S.W.3d at 571. The court concluded the policy reasons supporting *Jackson* did not apply when the cause of action had not accrued before transfer of the note. *See id.* at 574. An assignee would have the full four years after default under the state statute of limitations to bring suit, so "refusal to extend limitations in this situation does not significantly impact the FDIC's notes' marketability." *Id.* Here, the parties do not dispute that the note was in default when the SBC transferred it to LPP, so the rule of *Holy Cross Church* does not apply.

The *Jackson* rule has been applied to allow assignees of the SBA to obtain the benefit of federal statutes of limitations. *See Stephens v. LPP Mortgage, Ltd.*, 316 S.W.3d 742, 751 (Tex.App.-Austin 2010, pet. denied). The *Stephens* court relied on *Jackson* and distinguished *Holy Cross*, applying the *Jackson* rule to an SBA deed of trust even though the cause of action did not accrue until after the deed of trust was acquired from the SBA. *See Stephens*, 316 S.W.3d at 750–51 (application of federal law part of "bundle of rights" assigned by SBA). We conclude the trial court did not err in applying a six-year statute of limitations to LPP's claims.

## B. Accrual

■ We next determine when the six-year limitations period began to run on appellants' guaranties. Appellants argue

the limitations period began to run on August 8, 2000, so that LPP's suit in 2009 was barred even if the six-year limitations period is applied. Appellants contend the entire indebtedness became due on August 8, 2000, because Antonio's made an assignment for benefit of its creditors on that date. Because of this assignment, appellants argue, the entire indebtedness "immediately became due" under the terms of the note, and the statute of limitations began to run. We disagree.

Appellants rely on a provision in the SBA note: "The indebtedness shall immediately become due and payable, without notice or demand, ... upon the making by the undersigned of an assignment for the benefit of creditors." Citing *Lochte v. Blum*, 10 Tex.Civ.App. 385, 389, 30 S.W. 925, 927 (Tex.Civ.App.-San Antonio 1895, writ ref'd), appellants argue an assignment for benefit of creditors occurs when there is "a transfer by a debtor of some or all of his property to an assignee in trust, to apply the same, or the proceeds thereof, to the payment of some or all of his debts, and return the surplus, if any, to the debtor."

■ Appellee argues assignments for the benefit of creditors are governed by section 23.08 of the Texas Business and Commerce Code, and several of the statutory requirements, such as recording the assignment in the county records and filing a bond, were not met here. *See* Tex. Bus. & Com.Code Ann. § 23.08 (West 2009) (form and content of assignment for benefit of creditors). Appellants counter that common law assignments for the benefit of

agency assigns a note and deed of trust to a subsequent holder, the assignee retains the applicable federal law protection against any state statute of limitations.")(citing *Fed. Dep. Ins. Corp. v. Bledsoe*, 989 F.2d 805, 810 (5th Cir.1993), and *Jackson*, 883 S.W.2d at 174–

75); *see also Jackson*, 883 S.W.2d at 177 (section 1821(d)(14) does not create entirely new limitations scheme, but rather merely clarifies and amends existing law under section 2415(a)).

creditors are also acceptable, citing *Alliance Milling Co. v. Eaton, Guinan & Co.*, 86 Tex. 401, 404, 25 S.W. 614, 614 (Tex. 1894).

Recent case law on either statutory or common law assignments for the benefit of creditors is scarce. At a minimum, however, we believe there should be evidence of an agreement under which a debtor assigns its property to an assignee for distribution to particular creditors. *See, e.g.,* TEX. BUS. & COM.CODE ANN. § 23.02 (West 2009) (debtor may assign real and personal estate to assignee for distribution to each consenting creditor in proportion to each consenting creditor's claim); *Weider v. Maddox*, 66 Tex. 372, 375–76, 1 S.W. 168, 170 (1886) (under voluntary assignment for benefit of creditors under common law, assignee acquires title and authority through assignor, whose act is in the nature of a contract).

Here, appellants cite to a letter and an e-mail between representatives of Elk Horn Bank & Trust Co. and the SBA regarding a proposed sale of the real estate and assets of Antonio's and the planned application of the proceeds from the sale, as well as a letter from the bank to Lindsey advising that Antonio's assets had been liquidated. They also rely on a settlement statement from the closing of the sale of real property by Antonio's to two individuals not otherwise identified in the record. The settlement statement lists a $5000 "payoff of second mortgage loan" under "reductions in amount due to seller," which appellants identify as the loan at issue here. None of these documents evidences Antonio's agreement to assign its real and personal property to an assignee in trust for benefit of its creditors. *See Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721 (Tex.App.-Dallas 2004, no pet.)("An assignment is a contract between the assignor and assignee, and operates by way of agreement or contract."). Appellants have not established that Antonio's made an assignment for the benefit of its creditors causing the statute of limitations to begin to run on August 8, 2000. *See also Foscue v. Provident Nat'l Bank of Waco*, 210 S.W. 555, 555–56 (Tex.Civ.App.-Austin 1919, no writ) (no assignment for benefit of creditors where debtor merely agreed that purchaser of his business would pay off specific creditors rather than pay purchase price directly to debtor).

Appellants next argue that there is at least a fact issue on accrual of the statute of limitations because no demand was made on them until after suit was filed. They rely on *Wiman v. Tomaszewicz*, 877 S.W.2d 1, 5–6 (Tex.App.-Dallas 1994, no writ), for the proposition that "[i]f demand is an integral part of a cause of action or a condition precedent to the right to sue, the statute of limitations does not begin to run until demand is made, unless the demand is waived or unreasonably delayed." They argue that where demand is a condition precedent to suit, a plaintiff may not postpone the running of the statute of limitations by failing to make the demand. *See Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665, 671 (Tex.App.-Texarkana 1996, writ denied). As the *Stevens* court explained:

> Where demand is a prerequisite to a right of action, the injured party must make the demand within a reasonable time after it may lawfully be made. [Citations omitted.] The reasonableness of the delay is normally a fact question, but in the absence of mitigating circumstances, the law will ordinarily consider a reasonable time as being coincident with the running of the statute, and an action will be barred if a demand is not made within that period.

*Id.* Appellants argue there was unreasonable delay as a matter of law because LPP

did not make a written demand on them until "years after" limitations had run on the note.

In *Wiman,* we considered when the statute of limitations began to run against the guarantor.[2] As here, the guarantor's obligations were performable upon written demand. *See id.* We explained that the statute of limitations did not begin to run against the guarantor until demand was made, unless demand was waived or unreasonably delayed. *Id.* We concluded that a demand made approximately three weeks after acceleration of the underlying note was "not unreasonably withheld," and suit within four years of the demand on the guarantor was timely. *Id.*

Appellants contend demand on them should have been made within a reasonable time after the "assignment for benefit of creditors" in 2000. They argue there is at least a fact question on whether the demand on the guaranties was made in a "reasonable time" after it "could have been made."[3] The cases on which we relied in *Wiman,* however, have explained that a "reasonable time" is ordinarily concurrent with the statute of limitations. *See, e.g., Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 846 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.) (citing *Irwin v. Prestressed Structures, Inc.,* 471 S.W.2d 865, 867–68 (Tex.Civ.App.-Eastland 1971, writ ref'd n.r.e.); *Gabriel v. Alhabbal,* 618 S.W.2d 894, 896–97 (Tex.Civ.App.-Houston

[1st Dist.] 1981, writ ref'd n.r.e.)) (in absence of mitigating circumstances, time coincident with running of statute of limitations will be deemed reasonable) (citing *Foreman v. Graham,* 363 S.W.2d 371 (Tex. Civ.App.-Beaumont 1962, no writ)). Here, the trial court's judgment awarded damages for only the installment payments due within the six-year statute of limitations period.

■ Appellants concede the "general rule" that when recovery is sought on an obligation payable in installments, a separate cause of action accrues for each missed payment and a separate limitations period runs against each installment from the time it becomes due. *See, e.g., F.D. Stella Products Co. v. Scott,* 875 S.W.2d 462, 465 (Tex.App.-Austin 1994, no writ) ("For breach of contracts requiring fixed, periodic payments, Texas law is clear that a separate cause of action arises for each missed payment."). Appellants also concede LPP's second motion for summary judgment sought recovery of only those payments that accrued within a six-year statute of limitations. Appellants argue, however, that the Texas Supreme Court more recently has discouraged "seriatim litigation," citing *Hallco Texas, Inc. v. McMullen County,* 221 S.W.3d 50, 60 (Tex. 2006). As neither *Hallco* nor the cases on which it relied for this proposition were in the context of asserting a claim for breach of a contract requiring periodic payments,

---

**2.** In *Wiman,* as here, the terms of the guaranty agreements permitted LPP to sue the guarantors without first bringing suit against Antonio's. See *Wiman,* 877 S.W.2d at 6 ("Tomaszewicz cannot assert the defense of limitations based on when a claim against the maker accrued but must show that the statute of limitations expired on his own promise of guaranty.").

**3.** Appellants cite this rule as a quotation from *Cowart v. Russell,* 135 Tex. 562, 564, 144 S.W.2d 249, 249 (1940). *Cowart,* however,

does not address the issue of timeliness of a demand upon a guarantor. *See generally id.* Regardless of the citation error, the rule appellants attribute to *Cowart* is stated in *Aetna Cas. & Sur. Co. v. State,* 86 S.W.2d 826, 831–32 (Tex.Civ.App.-Fort Worth 1935, writ dism'd), also cited by appellants. The rule, however, includes the statement that "in the absence of mitigating circumstances, a time coincident with the running of the statute will be deemed reasonable." *Id.*

however, we conclude they do not resolve the issue presented here. *See id.* at 60–61 (claim of unconstitutional taking of property; court cited cases involving nuisance claims and tort claims for exposure to asbestos). We conclude appellants did not raise a fact issue regarding the time in which the demand was made. We overrule appellants' first issue.

## C. Amount due and attorney's fees

■ Appellants contend in the alternative that there was no foundation for LPP's calculation of the amount due under the note. Appellants further contend there are fact issues regarding whether LPP made an unreasonable demand for attorney's fees. We disagree.

Appellants contend the affidavit of Lisa Callendar on which LPP relies for evidence of the amounts due under the guaranties is wholly conclusory and lacked foundation because she was "merely a custodian of records" and not an expert or a competent witness, and did not testify how the amounts due under the note were calculated. Callendar testified she was the litigation counsel for CLMG Corp., the current loan servicer for LPP, and had become familiar with LPP's mortgage file on the loan and guaranties. She attached true and correct copies of documents from the file to her affidavit, testifying that they were business records of CLMG. She testified to the amounts due under the note as of December 31, 2009. Although she did not testify regarding her method of calculation, the face of the note reflects the amount of the monthly payments, the total indebtedness, and the interest rate on the note. Because Callendar provided the underlying facts to support her testimony, her affidavit is not conclusory. *Cf. Brown v. Brown,* 145 S.W.3d 745, 751 (Tex.App.-Dallas 2004, pet. denied) (affidavit making "many references" to documents that were

not attached or included in summary judgment evidence was conclusory). Further, appellants conceded in their motion for summary judgment that no payments had been made on the note after 1999, and offered no controverting evidence regarding different amounts due or other payments made. We conclude Callendar's affidavit was sufficient to establish the amounts due under the note and guaranties.

■ Appellants next contend that LPP made an excessive demand and therefore is not entitled to attorney's fees. Appellants argue LPP demanded for the full amount due under the note three months after appellants pleaded their limitations defense. They contend LPP should have known that at least half of its claim was barred by limitations at the time of its demand. A creditor who makes an excessive demand on a debtor is not entitled to attorney's fees for litigation required to recover the debt. *Findlay v. Cave,* 611 S.W.2d 57, 58 (Tex.1981). A demand is not excessive, however, simply because it is greater than what the factfinder later determines is actually due. *Hernandez v. Lautensack,* 201 S.W.3d 771, 777 (Tex. App.-Fort Worth 2006, pet. denied). The dispositive inquiry for determining whether a demand is excessive is whether the creditor acted unreasonably or in bad faith. *Id.* Application of this rule has been limited to situations in which the creditor refuses a tender of the amount actually due or indicates clearly to the debtor that such a tender would be refused. *Findlay,* 611 S.W.2d at 58; *Hernandez,* 201 S.W.3d at 777. Here, the demand was based on the note and on appellants' written contracts, and there was no evidence either Antonio's or the guarantors had made any attempt to tender the amount the court found to be due under the second motion for summary judgment. *See Findlay,* 611

S.W.2d at 58. In addition, LPP reduced the amount it sought in the litigation after the trial court made its ruling on the applicable statute of limitations. Without evidence of unreasonableness or bad faith on the part of LPP, we cannot conclude that the demand was excessive as a matter of law. *See Alford v. Johnston,* 224 S.W.3d 291, 298–99 (Tex.App.-El Paso 2005, pet. denied).

 Next, appellants contend there is a fact issue on the amount of attorney's fees recoverable, because demand was not made on them until after the lawsuit was filed, and attorney's fees were not segregated to exclude any amounts incurred before the demand was made. Further, appellants contend the summary judgment evidence showed fees incurred by CLMG Corp., not by LPP, and argue the attorney's fees affidavit is wholly conclusory. Appellants did not object to the failure to segregate in the trial court. *See Arthur J. Gallagher & Co. v. Dieterich,* 270 S.W.3d 695, 705–706 (Tex.App.-Dallas 2008, no pet.) (failure to object to fact that attorney's fees are not segregated waives objection on appeal). In addition, the summary judgment affidavits explain the relationship between CLMG Corp. and LPP, and the attorney's fees affidavit explains the activities engaged in by counsel, the applicable billing rate, the fees incurred, and counsel's familiarity with billing rates charged in the area. We conclude there is no genuine issue of material fact regarding the attorney's fees awarded by the trial court. *See Beaumont v. Basham,* 205 S.W.3d 608, 621–22 (Tex.App.-Waco 2006, pet. denied) (counsel's testimony not conclusory on its fact when it was supported by his billing records and his stated familiarity with attorney's fees charged in the area). Accordingly, we overrule appellants' second issue.

CONCLUSION

Judgment for LPP was proper as a matter of law. We overrule Barnes and Lindsey's issues and affirm the trial court's judgment.