

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00343-CV

PARKER COUNTY APPRAISAL
DISTRICT

APPELLANT

V.

BOSQUE DISPOSAL SYSTEMS,
LLC, AGNUS SWD SERVICES,
L.P., GORDON SWD SERVICES,
L.P., AND BOB PHILLIPS D/B/A
PHILLIPS WATER HAULING

APPELLEES

----------

### FROM THE 415TH DISTRICT COURT OF PARKER COUNTY
### TRIAL COURT NO. CV12-1573

----------

## OPINION[1]

----------

---

[1]This appeal was originally submitted to a panel consisting of Justices Walker, Dauphinot, and Meier. After submission, the court on its own motion elected to consider the appeal en banc.

## I.     INTRODUCTION

This appeal from a final judgment incorporating a summary judgment involves whether Appellant Parker County Appraisal District's assessment of four subsurface saltwater disposal wells separately from and in addition to the tracts of land on which the wells are located is void. The trial court granted summary judgment for the landowners, Appellees Bosque Disposal Systems, LLC; Agnus SWD Services, L.P.; Gordon SWD Services, L.P.; and Bob Phillips d/b/a Phillips Water Hauling (collectively, Owners), who contended that the value of the wells is subsumed within the value of their land; thus, the separate assessment and taxation of the income stream from the operation of those wells resulted in them being taxed twice on the same property. The Appraisal District challenges the trial court's ruling in a single issue. Because controlling authority compels the conclusion that Owners' real property interest in the saltwater disposal wells may be separately assessed and taxed, we will reverse the trial court's judgment, render a summary judgment for the Appraisal District on the controlling question of law, and remand the case to the trial court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Owners own tracts of land in Parker County, Texas.[2] Subsurface saltwater

---

[2]Only Phillips's property contains surface improvements unrelated to the saltwater disposal wells. The appraisal of Phillips's land includes separate categories for the land itself and the surface improvements—warehouses and office buildings—located on the land.

disposal wells are located underneath each Owner's tract.[3]  In 2012, 2013, and 2014, the Appraisal District appraised each of the subsurface saltwater disposal wells separately from Owners' tracts of land and any surface improvements. Owners filed protests with the Parker County Appraisal Review Board, challenging the separate valuation of the saltwater disposal wells on the appraisal rolls.[4]  *See* Tex. Tax Code Ann. § 41.41(a) (West 2015).  After the Appraisal Review Board denied their protests, Owners filed petitions for review in the 415th District Court of Parker County, seeking de novo review of the Appraisal Review Board's decisions.  *See id.* § 42.21 (West 2015), § 42.23 (West Supp. 2016).

In their petitions for review, Owners contended that because the Appraisal District had already appraised the real property upon which the wells are located, additional assessment based on the income stream from the wells subjected the land to "multiple appraisals for the same property."[5]  Owners sought several remedies:  (1) a declaratory judgment that the separate appraisal accounts

---

[3]These wells are used to return saltwater and chemicals produced as a byproduct of oil and gas drilling to the subsurface of land so as to reduce surface pollution.

[4]All but Phillips challenged the 2012–14 appraised values; Phillips challenged only the 2013 and 2014 appraised values.

[5]They also alleged that the wells were not adequately described as required by the tax code and sought declaratory relief on that independent basis. *See* Tex. Tax Code Ann. § 25.03(a) (West 2015) ("Property shall be described in the appraisal records with sufficient certainty to identify it.").

created for the assessment of the saltwater disposal wells are void; (2) a correction of the appraisal rolls in accordance with tax code 25.25(c); and (3) a reduction of the appraised value of the wells under tax code sections 42.24, 42.25, and 42.26. *Id.* §§ 42.24–.26 (West 2015).

Because the factual basis upon which the Appraisal District separately assessed the wells is undisputed, Owners filed a joint motion for summary judgment contending that as a matter of law, the tax code does not authorize the Appraisal District to separately value and tax the saltwater disposal wells and the fee simple surface tracts. Thus, they sought to have the trial court render a declaratory judgment that the separate accounts and appraised values for the wells are void. After the Appraisal District filed a combined response and competing motion for summary judgment, the trial court granted Owners' motion and denied the Appraisal District's, declaring the four accounts related to the saltwater disposal wells "void as illegal double taxation." One month later, the trial court rendered a final judgment for Owners in which it denied their supplemental request for attorney's fees. The Appraisal District perfected a timely appeal from the final judgment.

## III.  STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the

4

nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. The reviewing court should render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848.

When reviewing a summary judgment granted on specific grounds, the summary judgment can only be affirmed if the ground on which the trial court granted relief is meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996). But if a party preserves the other grounds presented that were not ruled on by the trial court, a court of appeals may consider these other grounds that the trial court did not rule on. *Id.* at 626. To preserve the grounds, the party must raise them in the summary judgment proceeding and present them in an issue or cross-point on appeal. *Id.* at 625–26.

5

## IV. SUMMARY JUDGMENT MOTIONS

Owners moved for summary judgment on two grounds: (1) the Appraisal District separately assessed and taxed a nonexisting separate interest in the saltwater disposal wells, and (2) even if a separate property interest exists, the tax code does not permit it to be taxed separately from and in addition to the surface tract. Owners argued that the saltwater disposal wells are not separate estates or interests in land because their surface and subsurface estates have not yet been severed by conveyance. Owners thus contend that the value attributable to the wells is subsumed in the already-appraised value of the land and that by separately appraising an interest related to the subsurface wells, the Appraisal District is essentially taxing the only properly taxable interest, i.e., the land, twice using different appraisal methods. They also contend that the saltwater disposal wells do not fit within any category of taxable real property set forth in the tax code.

The Appraisal District did not request specific relief in its motion for summary judgment and response—such as a final judgment in its favor or the dismissal of all of Owners' claims; therefore, it appears the Appraisal District sought to have the trial court determine the preliminary legal issue of whether the saltwater disposal well interests can be separately assessed and taxed under the law. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999); *Tri-County Elec. Coop., Inc. v. GTE Sw. Inc.*, 490 S.W.3d 530, 546 n.8 (Tex. App.—

Fort Worth 2016, no pet.). The arguments in its motion are directly responsive to Owners' arguments in their motion.

The summary judgment evidence shows that the Appraisal District valued the saltwater disposal wells on each Owner's tract based on an appraisal performed by Pritchard & Abbott, a tax consulting and appraisal firm that has been hired by several Texas counties. That firm is the only one in Texas that uniformly appraises these types of facilities using an income approach rather than simply placing a value on the personal property associated with the well. The wells were valued based on a uniform formula created by Pritchard & Abbott; the formula takes into account the well's past and forecasted revenue stream[6] and deducts a uniform percentage for operating expenses. Pritchard & Abbott developed its income model around 2007 to 2008. Pritchard & Abbott did not take the fair market value of the surface estates into account when conducting the separate appraisals in the accounts associated with the wells.

Owners included in their summary judgment evidence a Pritchard & Abbott report explaining the firm's appraisal methods for these types of saltwater disposal facilities. According to the report, a commercial disposal well has both personal and real property requiring valuation. The personal property consists of the above-ground equipment and hardware; "[t]he real property is the interest or

---

[6]The projected revenue stream is based on past numbers of barrels disposed of and future projected barrels disposed of, based on records from the Railroad Commission.

rights associated with injection into the subsurface of the land." In other words, Pritchard & Abbott's appraisal model values landowners' "right to inject into [the] subsurface formation" on their land. A Pritchard & Abbott employee testified by deposition that although the Appraisal District could "roll . . . up" or include the value of an income-producing saltwater disposal well in an appraisal of the surface land, that "is not done."

The summary judgment evidence also shows that working interest owners of oil and gas leases often maintain saltwater disposal facilities on the leasehold itself. According to Pritchard & Abbott's report summary, "[a] leasehold disposal well's value is already captured in the working interest owner's mineral interest value which is enhanced by the costs savings derived by not using a commercial vendor (i.e., no middle-man fees)." Thus, Pritchard & Abbott, at least, appears to maintain that the only taxable value of a saltwater disposal well located on leased land and used in connection with a subsurface mineral interest is an enhancement to the fair market value of the mineral estate. In contrast, according to Pritchard & Abbott, valuation of a commercial disposal facility's ability to inject into the land's subsurface is "best accomplished with the income approach to value where[in] the appraiser converts an estimated future profitability potential of the property to current market value." Therefore, "[t]he relevant income to analyze is net of all expenses of operation and taxes; in other words, the profitability (or lack of it)." This income approach lies whether the right to inject is severed or not, but if severed, typically, the owner has no operating

8

expenses to deduct. Using the market approach to appraise the value of such a facility is difficult because Texas does not require purchasers of property interests to disclose how much they paid for those interests.

## V. OWNERS' INTERESTS IN THE SALTWATER DISPOSAL WELLS MAY BE SEPARATELY ASSESSED UNDER THE TEXAS CONSTITUTION AND TAX CODE

Article VIII, section 1 of the Texas constitution provides that "[t]axation shall be equal and uniform" and that "[a]ll real property and tangible personal property in this State, unless exempt . . . shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Tex. Const. art. VIII, § 1(a)–(b). The prohibition against double taxation derives from this "Equal and Uniform" provision of the Texas constitution. *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 180 (Tex. 2013). The supreme court has clarified that "double taxation" for purposes of constitutional jurisprudence means something different than taxing the same property twice. *Id.* ("[T]he problem is not so much that two taxes are assessed; the problem is that the double-tax burden is imposed on some taxpayers but not on others. This unequal imposition is what offends common constitutional requirements of uniformity."); *see Tarrant Appraisal Dist. v. Colonial Country Club*, 767 S.W.2d 230, 234 (Tex. App.—Fort Worth 1989, writ denied) (explaining that taxing property according to an incorrect classification does not result in double taxation so long as all of those within the class are treated equally); *Parr v. State*, 743 S.W.2d 268, 274 (Tex. App.—San Antonio 1987, writ denied) ("The fact that

9

taxes were assessed separately on the 'surface' and 'subsurface' estates did not result in double taxation."). Although Owners' brief states that the effect of the separate assessment of the wells constitutes "illegal double taxation," the gist of their summary judgment argument was that because the taxation of the wells as a separate property interest is not authorized by the tax code, the Appraisal District is subjecting their land—which they contend is the only taxable estate—to improper multiple assessments. *In re Nestle USA, Inc.*, 387 S.W.3d 610, 620 (Tex. 2012) ("A property tax is equal and uniform only if it is in proportion to property value.").

"[T]he Legislature may constitutionally draw distinctions in the manner in which market value of property is determined for ad valorem tax purposes, as long as the classifications are not unreasonable, arbitrary, or capricious." *Enron Corp. v. Spring ISD*, 922 S.W.2d 931, 936 (Tex. 1996). The tax code defines "real property" as including land, improvements, mines, quarries, minerals in place, standing timber, or "an estate or interest, other than a mortgage or deed of trust creating a lien on property or an interest securing payment or performance of an obligation," in land, improvements, mines, quarries, minerals in place, or standing timber. Tex. Tax Code Ann. § 1.04(2) (West 2015); *Matagorda Cty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 332 (Tex. 2005). The supreme court has explained that "[a] single tract may include several of these aspects of realty, or perhaps even all," and that "[a]t least some of these aspects of real property can be taxed separately even though all are part

10

of the same surface tract" because of the potential overlap of the categories delineated in section 1.04(2). *Coastal Liquids*, 165 S.W.3d at 332, 334. Section 25.02 of the tax code provides that appraisal records must include both "real property" and "separately taxable estates or interests in real property." Tex. Tax Code Ann. § 25.02 (West 2015).

Contrary to Owners' argument in their motion for summary judgment, the supreme court has squarely held that the separate taxation of different aspects of the same tract of land "does not depend on whether each aspect is separately owned, as identical properties cannot be taxed differently depending on whether, for example, a mineral interest has been legally severed." *Coastal Liquids*, 165 S.W.3d at 332 (citing *State v. Fed. Land Bank of Houston*, 329 S.W.2d 847, 849 (Tex. 1959)). In *State v. Federal Land Bank of Houston*, the supreme court held that a county's taxing system of separately assessing severed mineral estates but not separately assessing unsevered mineral estates was illegal under the equal and uniform clause of the Texas constitution. 329 S.W.2d at 848–50; *see also Duval Cty. Ranch Co. v. State*, 587 S.W.2d 436, 444 (Tex. Civ. App.—San Antonio 1979, writ ref'd n.r.e.) (concluding that it was not improper for county to assess taxes separately on surface and subsurface mineral estates of land even when there had not yet been a conveyance of any part of the mineral estate to a third party), *cert. denied*, 449 U.S. 1077 (1981). Therefore, Owners' argument that Texas law expressly prohibits the separate assessment of the surface and

11

subsurface absent a severance and conveyance of all or part of the subsurface estate is incorrect.

Owners contend that a taxable estate or interest cannot merely "spring into existence" for taxation purposes without some legal act such as a conveyance and that their permit from the Railroad Commission does not create a taxable interest under the tax code. But the possibility of using the subsurface of their land to dispose of saltwater brine byproduct if they could obtain the necessary permits was already included as part of their rights in the fee simple estates they own. *See Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382–83 (Tex. 2012) ("The 'bundle of rights' concept is appropriate because property does not refer to a thing but rather to the rights between a person and a thing.").

Owners further contend that the descriptions of the types of real property that may be taxed is limited by and must fit squarely into one of the types of interests listed in chapter 25 of the tax code; otherwise, those interests may not be valued and taxed separately from the land. *See* Tex. Tax Code Ann. §§ 25.05 (life estates), 25.06 (generally, property encumbered by a leasehold or other possessory interest and property encumbered by a mortgage, deed of trust, or other interest securing payment or the performance of an obligation), 25.07 (certain types of leasehold interests), 25.08 (improvements), 25.09 (condominiums and planned unit developments), 25.10 (standing timber), 25.11 (property owned in undivided interests), 25.12 (mineral interests), 25.13 (exempt

property subject to contract of sale), 25.135 (qualifying trusts) (West 2015).[7]

Although courts are to strictly construe tax statutes in the taxpayer's favor if in doubt about their scope,[8] the supreme court has held that the tax code "does not expressly require real property to be listed in the six categories used to define it [in section 1.04(2)]. To the contrary, the Code explicitly requires separate records of the appraised value of land, improvements, and separate interests, but not of mines, minerals, or timber." *Coastal Liquids*, 165 S.W.3d at 334. According to the supreme court, "some of the categories used to define real property clearly overlap," making it "difficult to draw the line between these categories," and because "a fee-simple estate is clearly 'an estate or interest . . . in property' [under section ] 1.04(2)(F), this last category necessarily overlaps to some degree with all the former ones." *Id.* & n.24. The supreme court has cautioned that the conclusion that property "should escape taxation entirely

---

[7]Owners argued that these provisions of the tax code "expressly prohibit[] the taxation of lesser estates apart from a non-exempt fee simple estate." This is an overstatement of the scope of chapter 25; most leaseholds, for instance, are taxed to the fee simple owner while mineral interests—regardless of whether they are separately owned—are taxed to the mineral interest owner. *See* Tex. Tax Code Ann. §§ 25.06, .07; *Destec Props. Ltd. P'ship v. Freestone Cent. Appraisal Dist.*, 6 S.W.3d 601, 606 (Tex. App.—Waco 1999, pet. denied) (explaining that when land is encumbered by a leasehold, property owner is assessed value of both encumbered land and leasehold interest because of unique nature of such property).

[8]*See, e.g., Calvert v. Tex. Pipe Line Co.*, 517 S.W.2d 777, 781 (Tex. 1974); *Tex. Unemployment Comp. Comm'n v. Bass*, 151 S.W.2d 567, 570 (Tex. 1941). Owners correctly cite this principle of statutory construction, but we cannot rely on it to hold contrary to supreme court precedent. *See Lubbock Cty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002).

13

because it [is] unclear which of the Code's appellations should apply . . . would raise difficult constitutional questions." *Id.* at 334–35 (citing the Texas constitution's equal and uniform clause). Moreover, even if an appraisal district taxed an aspect of real property under an incorrect subcategory of section 1.04(2), that aspect of the property would not be exempt from taxation if the property description used in the appraisal roll gave the owner "notice of what property was included in each tax account (and thus some assurance that it was not included twice)."[9] *Id.*; *cf.* Tex. Att'y Gen. Op. No. GA-0790 (2010) (opining that no state law directly addresses whether land and improvements owned by same taxpayer must be combined into a single account and concluding that whether to assess land and other taxable real property interests in a separate or a single account "is an administrative determination made by the chief appraiser").

The Tyler court of appeals has considered the same issue in a 2014 appeal involving the same type of disposal wells and the same method of appraisal by Pritchard & Abbott. In *Key Energy Services, LLC v. Shelby County*

---

[9]The supreme court also held that even if the manmade salt dome caverns at issue in that case could be considered to be part of the "land," they could still be taxed separately from the remainder of the land. *Coastal Liquids*, 165 S.W.3d at 334–35. Thus, Owners' attempt to distinguish *Coastal Liquids* because those caverns could be considered to be an "improvement" is unpersuasive. *Id.* at 330, 335. Likewise, Owners' argument that the property descriptions are insufficient to allow foreclosure of a tax lien is not persuasive as the descriptions are sufficient to give notice of the interest that is being separately taxed. *See id.* at 365.

*Appraisal District*, a jury trial case, the Tyler court considered whether the trial court had erred as a matter of law by allowing the Shelby County Appraisal District to attribute a separate value to the right to inject saltwater into the land's subsurface "because lesser estates are generally nontaxable as separate interests." 428 S.W.3d 133, 145 (Tex. App.—Tyler 2014, pet. denied). Relying primarily on *Coastal Liquids*, but not engaging in a detailed analysis, the Tyler court held that the landowners' right to inject into wells that were "in active commercial use" was a taxable estate or interest under tax code section 1.04(2)(F). *Id.* at 146 (citing *Evans v. Ropte*, 96 S.W.2d 973, 974 (Tex. 1936); *Davis v. Vidal*, 151 S.W. 290, 293 (1912); *Lochte v. Blum*, 30 S.W. 925, 927 (1895); *Shepard v. Galveston, Houston & Henderson Ry. Co.*, 22 S.W. 267, 268 (1893)). Owners attempt to distinguish the cases cited in *Key* because "each . . . involves a conveyance of some kind," but as we have discussed above, it is not the severance of the surface and subsurface estates by conveyance that gives a taxing authority the right to assess different types of property interests.

Owners rely on *Cherokee Water Co. v. Gregg County Appraisal District* for the proposition that the saltwater disposal wells may not be taxed separately and must be included in the land value. 801 S.W.2d 872 (Tex. 1990). The plaintiff in *Cherokee Water Co.* owned all of Lake Cherokee and numerous acres surrounding the lake that it leased to its shareholders; many of the lessees had built homes and other improvements on the leased land. *Id.* at 873–74. The Gregg County Appraisal District appraised the property based on its potential

15

development use, but Cherokee Water Co. contended that it should only be assessed a reversionary interest in the land because all of the land was encumbered by leases, thus limiting the land's use and diminishing its value. *Id.* at 874–75. The supreme court held that the then-newly amended section 23.01(b) of the tax code—providing that "each property shall be appraised based upon the individual characteristics that affect the property's market value"—did not change the courts' long-standing interpretation of sections 25.06 and 25.07 of the tax code, and their prior versions, that real property taxes of land encumbered by a leasehold are assessed against the lessor rather than the lessee. *Id.* at 875–76; *see* Tex. Tax Code Ann. § 23.01(b) (West Supp. 2016), §§ 25.06, 25.07. Thus, *Cherokee Water Co.* is a statutory construction case that is inapposite to the multiple appraisal issue.

Although Owners contend that the case held that the Tax Code "expressly prohibit[s] the taxation of lesser estates apart from a non-exempt fee simple estate," the statutes upon which the *Cherokee* holding is based—Tax Code sections 25.06 and 25.07—speak only to leaseholds and mortgages, not other estates or interests in real property. *Id.* §§ 25.06–.07; *see also Dallas Cent. Appraisal Dist. v. Jagee Corp.*, 812 S.W.2d 49, 51–52 (Tex. App.—Dallas 1991, writ denied) (holding that, for taxation purposes, value of lesser leasehold estate was to be included in valuation and assessment of fee simple estate; thus, full assessment of fee simple estate included not only the market value of the fee

16

simple unencumbered by a lease but also the "present right to receive income in the form of rent").

Owners also rely on *Gregg County Appraisal District v. Laidlaw Waste Systems, Inc.* in support of their argument that the tax code does not authorize the separate valuation and taxation of a right to inject into the subsurface. 907 S.W.2d 12 (Tex. App.—Tyler 1995, writ denied) (op. on reh'g). In *Laidlaw*, the court of appeals held that the trial court did not abuse its discretion by refusing to admit for the jury's consideration on rule 403 grounds an appraisal that was expressly based in part on value attributable to Laidlaw's landfill operation permit from the State of Texas and other intangibles. *Id.* at 19–20; *see also* Tex. Tax Code Ann. §§ 1.04(6) (including "permit" in definition of "intangible personal property"), 11.02(a) (providing that intangible personal property is not taxable except as provided by insurance or finance code) (West 2015); Tex. R. Evid. 403. Because Laidlaw leased the land on which it operated the landfill, the landowner was responsible for the assessment. *Laidlaw*, 907 S.W.2d at 15, 18 (noting that landowner had designated predecessor of lessee as agent for ad valorem tax purposes); *see* Tex. Tax Code Ann. § 25.06. The court of appeals held that the admission of the appraisal would have risked confusing the jury because it was impossible to tell whether the appraised land value was derived from the use of the land itself or the use of the "capital, trucks, equipment, machinery, trained personnel, contracts, and business acumen" used by Laidlaw in running the landfill. *Laidlaw*, 907 S.W.2d at 20.

Owners contend that the Appraisal District assessed their saltwater disposal wells based on the value of their Railroad Commission permits allowing them to use the land for regulated injection purposes and that the assessment is thus faulty for the same reason as the appraisal evidence in *Laidlaw*. But the summary judgment evidence does not show that the Appraisal District placed any value on the Railroad Commission's permits or other intangible property in valuing the interest associated with the saltwater wells. Instead, the Appraisal District based its assessment on the Pritchard & Abbott appraisal that calculated a three-year average revenue and deducted forty-five percent for estimated operating expenses. An income-based appraisal model can be appropriately employed by a taxing authority and is authorized by the tax code, depending on a property's individual characteristics. *See* Tex. Tax Code Ann. § 23.01(a), (b) (providing that all taxable property is appraised at market value, that market value must be determined using generally accepted accounting methods and techniques, and that while similar methods and techniques must be used in appraising similar property, "each property shall be appraised based upon the individual characteristics that affect the property's market value"), § 23.0101 (providing that in determining market value, chief appraiser "shall consider the cost, income and market data comparison methods of appraisal and use the most appropriate method") (West 2015); *Travis Cent. Appraisal Dist. v. FM Props. Operating Co.*, 947 S.W.2d 724, 734 (Tex. App.—Austin 1997, writ denied) (explaining that "[t]he standard definition of value applied to income-

18

producing property is the present worth of future benefits expected to be derived from ownership"); *cf. Destec Props.,* 6 S.W.3d at 605 (explaining that use of income method of appraisal is more appropriate than other methods when valuing overriding royalty interest "because the value of the interest lies primarily in its income-producing potential"). Accordingly, the principles upon which *Laidlaw* is based are not controlling here either.

We hold that the trial court erred by granting judgment for Owners on the ground that the Appraisal District illegally subjected them to multiple assessments on the same property. We also hold that the trial court erred by denying the Appraisal District's motion for summary judgment on the ground that the accounts are not void because it separately assessed Owners' interests in the saltwater disposal wells. Therefore we sustain the Appraisal District's sole issue.

## VI. CONCLUSION

Because controlling authority does not support the preserved ground upon which Owners filed their motion for summary judgment—that they were subject to illegal multiple assessments for the same land,[10] we hold that the trial court

---

[10]Although Owners moved for summary judgment on the ground that the separate accounts for the saltwater disposal wells are void under the tax code for lack of an adequate property description, the trial court did not grant summary judgment for that reason, nor did Owners file a notice of appeal or cross-issue seeking summary judgment on that ground. Thus, we do not address whether the trial court should have granted summary judgment for that reason. *See Cates,* 927 S.W.2d at 625–26. Moreover, we do not address any of the other claims included in Owners' petitions for review—including whether the Appraisal

19

erred by granting Owners a summary judgment declaring the accounts void as illegal double taxation. Because the trial court also erred by denying the Appraisal District's motion for summary judgment seeking to resolve the legal question of the propriety of its separate assessment of the land and associated saltwater disposal wells, we render summary judgment for the Appraisal District solely on that issue as raised in its motion. Because the final judgment was based on the summary judgment for Owners, we reverse the trial court's judgment, and we remand the case to the trial court for further proceedings consistent with this opinion.

/s/ Sue Walker

SUE WALKER
JUSTICE

EN BANC

MEIER, J., filed a dissenting opinion, in which GARDNER and SUDDERTH, JJ., join.

DELIVERED: December 1, 2016

---

District unequally valued Owners' saltwater disposal facilities—because neither party sought summary judgment relief on those claims.