Justice Blacklock delivered the opinion of the Court.
The plaintiffs are taxpayers who own land in Parker County. Each tract at issue in this case contains a saltwater disposal well, in which wastewater from oil and gas operations can be injected and permanently stored underground. When valuing these tracts for property tax purposes, the Parker County Appraisal District assigned one appraised value to the wells and another appraised value to the land itself. The taxpayers contend that separate appraisal of the wells and the land amounts to illegal double taxation of the wells as a matter of law. The trial court rendered summary judgment for the taxpayers, but the court of appeals reversed and remanded in favor of the District. Applying our prior decision in Matagorda County Appraisal District v. Coastal Liquids Partners, L.P. , 165 S.W.3d 329 (Tex. 2005), we conclude that the District did not employ a facially unlawful means of appraising the taxpayers' property, which based on the record before us appears to derive much of its market value from the wells. We therefore affirm the judgment of the court of appeals and remand the case to the trial court to address any other pending challenges.
I. Background
The taxpayers are Bosque Disposal Systems, LLC, Agnus SWD Services, L.P., Gordon SWD Services, L.P., and Bob Phillips d/b/a/ Phillips Water Hauling. Each owns land in Parker County. Their properties contain saltwater disposal wells, in which wastewater containing salt and other chemicals is injected deep underground and permanently stored in subsurface layers of rock. The manufactured components of these wells include a well bore, down-hole tubing, surface pumps, pipes, and tanks used to inject wastewater underground.
In 2012, 2013, and 2014, the District appraised the wells separately from the surface land, creating distinct appraisal accounts for "saltwater disposal facilities" apart from the existing appraisal accounts for the surface land. The District estimated the wells' market value based on the income generated from their commercial operation. According to the taxpayers' motion for summary judgment, the District appraised the four wells at approximately *94 $7 million total. The District appraised the four tracts of surface land at approximately $700,000 total. After the taxpayers unsuccessfully challenged the appraisals of the saltwater disposal wells with the county appraisal review board, they sought review in the district court. See TEX. TAX CODE §§ 42.41(a), 42.21.
The taxpayers moved for summary judgment, arguing that the Tax Code does not permit the County to appraise the wells separately from the land itself where both interests are owned by the same person and have not been severed into discrete estates. The District filed a cross-motion for summary judgment, arguing that the Tax Code permitted the District to estimate the total market value of each taxpayer's property by combining two separate appraisals-one for the well and one for the land. The trial court granted the taxpayers' summary judgment motion and denied the District's motion. It signed an order stating that " 'estate or interest' ad valorem accounts associated with the" the saltwater disposal wells "are declared void as illegal double taxation." The apparent effect of the trial court ruling was that the taxpayers' property taxes for 2012, 2013, and 2014 would be based only on the value of the surface land apart from the wells. The taxpayers would not owe property taxes attributable to whatever additional market value might arise from the presence of the disposal wells on the land.
The court of appeals, sitting en banc, concluded that controlling authority from this Court did not support the taxpayers' contention that "they were subject to illegal multiple assessments for the same land." Parker Cty. Appraisal Dist. v. Bosque Disposal Sys., LLC , 506 S.W.3d 665, 674 (Tex. App.-Fort Worth 2016, pet. granted) (relying on Coastal Liquids and other authorities). It reversed the trial court's judgment and rendered judgment in favor of the District on that issue, upholding the separate assessment of the land and the saltwater disposal wells. Id. Three justices dissented. Id. at 675-76. The court of appeals remanded the case to the trial court for further proceedings on issues raised by the taxpayers but not reached by the trial court. We granted the taxpayers' petition for review.
II. Legal Framework
The parties do not dispute the facts relevant to our review. The outcome of the case turns entirely on questions of law, which we review de novo. Colorado Cty. v. Staff , 510 S.W.3d 435, 444 (Tex. 2017). The parties offer competing interpretations of the Texas Constitution and the Texas Tax Code. "When interpreting our state Constitution, we rely heavily on its literal text," Republican Party of Tex. v. Dietz , 940 S.W.2d 86, 89 (Tex. 1997), and our goal is to "give effect to its plain language." City of Beaumont v. Bouillion , 896 S.W.2d 143, 148 (Tex. 1995). Likewise, when interpreting a statute, "[t]he text is the alpha and the omega of the interpretive process." BankDirect Capital Fin., LLC v. Plasma Fab, LLC , 519 S.W.3d 76, 86 (Tex. 2017). While we have often stated that our objective in statutory interpretation is to give effect to the Legislature's intent, Staff , 510 S.W.3d at 444, we have also acknowledged that "the Legislature expresses its intent by the words it enacts and declares to be the law." Molinet v. Kimbrell , 356 S.W.3d 407, 414 (Tex. 2011).
Article VIII, section 1(b) of the Texas Constitution provides that "[a]ll real property and tangible personal property in this State ... shall be taxed in proportion to its value." This taxation "shall be equal and uniform." TEX. CONST. art. VIII, § 1 (a). The Tax Code implements these constitutional commands. It provides that "[a]ll real and tangible personal property that *95 this state has jurisdiction to tax is taxable unless exempt by law." TEX. TAX CODE § 11.01(a). Much of the parties' dispute concerns the Tax Code's definition of "real property." As used in the Tax Code, " 'Real property' means: (A) land; (B) an improvement; (C) a mine or quarry; (D) a mineral in place; (E) standing timber; or (F) an estate or interest ... in a property enumerated in Paragraphs (A) through (E) of this subdivision."Id. § 1.04(2). An "improvement" includes "a building, structure, fixture, or fence erected on or affixed to land." Id. § 1.04(3)(A).
The Tax Code establishes appraisal districts in each county, such as the Parker County Appraisal District, and makes these districts "responsible for appraising property in the district for ad valorem tax purposes." Id. § 6.01 (a), (b). Chapter 23 of the Tax Code instructs appraisal districts on how to appraise property. "[A]ll taxable property is appraised at its market value ...." Id. § 23.01(a). "The market value of property shall be determined by the application of generally accepted appraisal methods and techniques." Id. § 23.01(b). "[E]ach property shall be appraised based upon the individual characteristics that affect the property's market value, and all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value." Id. The Code requires the appraiser to "consider the cost, income, and market data comparison methods of appraisal and use the most appropriate method." Id. § 23.0101.
III. Analysis
The parties do not dispute that the taxpayers own taxable land in the district. Nor do the parties dispute that the taxpayers' land contains functioning saltwater disposal wells that have significant market value. Importantly, the taxpayers do not claim that land in Parker County containing a valuable saltwater disposal well has the same market value as a comparably sized tract of land with no such well on it. Instead, the taxpayers complain that the District appraised the wells as separate units of real property apart from the land. This, the taxpayers contend, violated the Tax Code's definition of "real property" and amounted to double taxation of the wells in violation of the Texas Constitution. According to the taxpayers, the wells themselves do not fit within any of the categories of "real property" listed in the Tax Code, and appraising the wells separately from the land effectively appraises (and taxes) the wells twice-once on the value of the land, and once on the separate value of the wells. The taxpayers rely heavily on the fact that the wells have never been severed from the surface land and remain part of the taxpayers' fee simple ownership of these properties. They contend that the District may not divide the wells from the land for tax purposes when the wells and the land have not been divided for ownership purposes.
The District responds that it appraised the surface land in one account based on comparable tracts of raw land, and it appraised the wells in another account based on the income method of appraisal. According to the District, its appraisal of the land did not take into account the value of the wells. The District's position is that the sum of the two appraisals approximates the market value of the entire property, wells and all. In the District's view, the Tax Code requires it to appraise these properties based on their market value, and splitting each property into two accounts-one for the land and one for the well-was one lawful way of estimating the properties' overall market value.
We agree with the court of appeals that our prior decision in *96 Coastal Liquids , 165 S.W.3d 329, controls the outcome. In that case, Coastal Liquids had a leasehold interest in man-made salt dome caverns used to store hydrocarbons. We rejected Coastal Liquids' argument that the appraisal district could not separately appraise the caverns and the land containing them. Id. at 335-36. We concluded that whether the underground facilities were viewed as an "improvement" or an "estate or interest" in property, they were a valuable part of the taxable real property that the Tax Code required the district to appraise. We recognized that (1) the Tax Code's categories of real property "clearly overlap," (2) sometimes "it is difficult to draw the line between these categories," but (3) "property should not escape taxation entirely because it was unclear which of the Code's appellations should apply." Id. at 334-35. We observed that "[i]t has long been the case that at least some of [the Tax Code's enumerated] aspects of real property can be taxed separately even though all are part of the same surface tract." Id. at 332. We also recognized that "[t]his rule does not depend on whether each aspect [of real property] is separately owned, as identical properties cannot be taxed differently depending on whether, for example, a mineral interest has been legally severed." Id.
Like the taxpayers in today's case, Coastal Liquids argued that its underground facilities were double taxed because, as an unsevered part of the land, they were already included in the district's assessment of the land. We rejected that argument. Id. at 334-35. We concluded that whether the value of one aspect of the land was already contained in the appraised value of the land itself was a question to be answered on a case-by-case basis, taking into account "the individual characteristics that affect the property's market value." Id. at 334 (quoting TEX. TAX CODE § 23.01(b) ). We agreed in Coastal Liquids , and we agree today, that "many aspects of real property cannot be separately assessed from the value of the surface land, and that when the latter reflects the former a separate assessment would tax them twice." Id. (emphasis added). But the question in Coastal Liquids and this case is not merely whether the land itself and one of its valuable aspects have been appraised separately. The question is whether the appraisal of the land itself already accounted for the value of the separately appraised aspect of the property. If so, separate appraisal of that aspect of the property would result in illegal double taxation. If not, separate appraisal may be one permissible way to achieve an overall measurement of the property's market value.
As in Coastal Liquids , we can discern no bright-line rule that would dictate when the law permits separate appraisal of a valuable aspect of real property: "[I]t is difficult to state a precise rule about what property can be separately assessed because of the multitude of possible circumstances and the hundreds of Tax Code provisions that may govern them. Perhaps the most that can be said is that each property should be appraised 'based upon the individual characteristics that affect the property's market value.' " Id. (quoting TEX. TAX CODE § 23.01(b) ).
We recognized in Coastal Liquids the constitutional problem that could arise if "property should escape taxation entirely because it was unclear which of the Code's appellations should apply." Id. at 334-35. If otherwise taxable property could escape taxation merely because the label assigned to it by the appraisal district overlapped with the label assigned to another aspect of the property, the result would seldom be "equal and uniform" taxation of property "in proportion to its value."
*97 TEX. CONST. art. VIII, § 1 (a), (b). Under Coastal Liquids , we do not presume double taxation merely because it is semantically possible to include one valuable aspect of the property in two different appraisal accounts. Instead, "evidence about what property was or was not included" in each appraisal account should be consulted to determine whether double taxation has in fact occurred. 165 S.W.3d at 336.
Coastal Liquids 's reasoning controls this case. While the caverns at issue in Coastal Liquids are not physically identical to the taxpayers' saltwater disposal wells, the physical distinctions do not affect our analysis. The facilities in both cases were underground structures that combine manmade elements with the ground itself for use in the oil and gas industry. In both cases, the facilities increased the market value of the taxable real property containing them. We fail to discern any distinction that would, under the Tax Code and the Constitution, make one taxable and the other not.
Under Coastal Liquids , the taxpayers' saltwater disposal wells can be classified as an improvement, an estate or interest in land, or some combination of these. See TEX. TAX CODE § 1.04(2). The wells include a well bore, surface pumps, and other fixed equipment, as well as an underground rock structure that is capable of holding the wastewater injected into it. Like the caverns in Coastal Liquids , the taxpayers' wells are part of their real property and contribute significantly to the properties' overall market value, which the District must appraise. Ignoring this economic reality would mean that two properties of similar location, acreage, and other surface attributes would have the same appraised value even if one contains a disposal well and the other does not. See Combs v. Roark Amusement & Vending, L.P. , 422 S.W.3d 632, 637 n.14 (Tex. 2013) (noting that "the tax law deals with economic realities, not legal abstractions") (quoting Comm'r v. Sw. Expl. Co. , 350 U.S. 308, 315, 76 S.Ct. 395, 100 L.Ed. 347 (1956) ). Such a result could violate the constitutional requirement that "[t]axation shall be equal and uniform," TEX. CONST. art. VIII, § 1 (a), as well as the requirement of article VIII, section 1(b) that properties should be taxed in proportion to their value. Market value is the touchstone of appraisal, and the touchstone of market value is what a willing seller would pay to a willing buyer. See TEX. TAX CODE §§ 1.04(7) (defining market value), 23.01(a); City of Austin v. Cannizzo , 153 Tex. 324, 267 S.W.2d 808, 812 (1954). Ignoring the wells completely, as the taxpayers desire, would be to ignore the economic reality, which the taxpayers do not dispute, that buyers of real property in Parker County would pay much more for land with a profitable injection well on it than they would pay for raw acreage.
Having concluded that the disposal wells are part of the taxpayers' real property and contribute to its value, we find nothing legally improper in the District's decision to separately assign and appraise the surface and the disposal wells. The Tax Code expressly contemplates that taxing districts may separately appraise "separately taxable estates or interests in real property." TEX. TAX CODE § 25.02(a)(3). As we recently explained, "[g]enerally, a tract of land and its improvements are appraised together and assigned a single value. But appraisal districts are permitted to divide a tract and its improvements into separate components, each with its own tax account number, and appraise them individually." Valero Ref.-Tex., L.P. v. Galveston Cent. Appraisal Dist. , 519 S.W.3d 66, 69 (Tex. 2017).
Further, the Tax Code does not prohibit the use of different appraisal methods for *98 different components of a property. In fact, the Code suggests otherwise, requiring the chief appraiser to consider each method and to select "the most appropriate method" when "determining the market value of property." TEX. TAX CODE § 23.0101. Different methods may be most appropriate for appraising different interests, estates, or improvements, and the District was not prohibited by law from using one appraisal for the land and another for the wells.
The Tyler court of appeals has likewise held that saltwater disposal wells can be separately appraised. Key Energy Servs., LLC v. Shelby Cty. Appraisal Dist. , 428 S.W.3d 133 (Tex. App.-Tyler 2014, pet. denied). In that case, the taxpayer raised arguments similar to those raised here. It argued that its wells were not taxable as separate interests, that the district should not have categorized the disposal well as an estate or interest in land when taxes had already been assessed on the land, and that taxing both amounted to invalid double taxation. Relying on Coastal Liquids , the court of appeals reasoned that the separate appraisal of the wells as an estate or interest under section 1.04(2)(F) was not unlawful unless the evidence indicated that the wells' value had actually been captured twice. Key Energy Servs. , 428 S.W.3d at 145-46. We agree.
Given the market value added to the taxpayers' real property by the disposal wells, the District was obligated to take the wells into account by some method or another. See TEX. CONST. art. VIII, § 1 (b) ("All real property and tangible personal property in this State ... shall be taxed in proportion to its value ...."). The District's decision to account for the value the wells add to the property using the income method of appraisal was not improper as a matter of law. See TEX. TAX CODE § 23.0101 (authorizing use of the income method). Absent evidence that the value the wells contribute to the property has actually been counted twice, we will not presume that separate appraisal of the wells and the land amounts to double taxation merely because the wells can be thought of as part of the land. Nor will we presume double taxation merely because the wells have not been legally severed from the land. See Coastal Liquids , 165 S.W.3d at 334 (rejecting owner's argument that placing underground facilities in separate categories "must be presumed to be double taxation"); id. at 336 ("[W]e disagree with the proposition that cases asserting double taxation should be determined by presumption rather than proof."). If the value of the wells has been counted twice, the taxpayers will have the opportunity to demonstrate this on remand, assuming they preserved the issue. If the value of the wells has been counted only once, the taxpayers have not been harmed-at least relative to their neighbors, all of whom owe property taxes based on the market value of their property.
Of course, if the taxpayers believed that the wells or the land or both were appraised in excess of their true market value or that the income method was an improper means of estimating the market value attributable to the wells, they were entitled to challenge the amount or the method of the appraisal. See TEX. TAX CODE §§ 42.01, 41.41. We hold only that separate appraisal of the wells under the income method was not per se unlawful and express no opinion on whether the District otherwise conducted the appraisal lawfully.
The taxpayers offer several objections to this result, but we find none of them persuasive. The taxpayers contend that a separately appraisable "estate or interest" under the Tax Code arises only from "transfers, conveyances, and reservations." They argue that the "estate or interest"
*99 taxed here "simply does not exist" because it has not been severed from the surface land. Coastal Liquids rejected this argument. We held that different "aspects of real property can be taxed separately" and that "[t]his rule does not depend on whether each aspect is separately owned." 165 S.W.3d at 332. And as explained above, the Tax Code expressly contemplates the separate appraisal of different estates or interests in the same piece of property. See TEX. TAX CODE § 25.02(a)(3), (7).
The taxpayers also argue that the wells cannot be taxed because they are "intangible" and "permit dependent," and amount to nothing more than a "right to inject." They emphasize deposition testimony from the District's appraisal consultant, who testified that his methods appraised the "right to inject."[1] Intangible property, such as a legal right, generally is not taxable. TEX. TAX CODE §§ 11.01(a), 11.02(a). But the appraiser's mistaken legal characterization of his work does not alone render the entire appraisal a nullity and exempt the taxpayers from taxation on a valuable aspect of their real property. The taxpayers' wells contribute substantially to the market value of their properties, and the District needed to take the wells into account when appraising the property. The appraiser's testimony may suggest flaws in the appraisal method, which the taxpayers could demonstrate on remand. But statements in a deposition by a non-lawyer do not entitle the taxpayers to have their property appraised as if it contains no valuable disposal wells. We agree with Key Energy Services that the income-producing wells that contribute to the market value of the property should not be completely ignored based merely on the suggestion that the wells amount to nothing more than a "right to inject." 428 S.W.3d at 145.
Furthermore, any suggestion that the disposal wells are non-taxable intangibles ignores the wells' physical existence. The Code defines "intangible personal property" as "a claim, interest (other than an interest in tangible property), right, or other thing that has value but cannot be seen, felt, weighed, measured, or otherwise perceived by the senses, although its existence may be evidenced by a document." TEX. TAX CODE § 1.04(6). The injection facilities *100 are hardly incorporeal; they consist of physical, underground rock and stored liquids, a well bore, down-hole tubing, and surface equipment. They are as tangible as any taxable mineral estate. The Code's definition of "intangible" does not describe these wells.
The taxpayers point out that they need a permit to operate the wells. Under the Code, intangible personal property "includes a ... license or permit." Id. But we would have to ignore economic realities and a plain reading of the statute to conclude that the facilities at issue here, despite all their substantial physical aspects, are in reality intangibles because a permit may be required to operate them. By this reasoning a refinery would be a non-taxable intangible, as would valuable mineral estates, because permits are required to operate refineries and extract minerals.
We emphasize that challenges to the separate appraisal of different aspects of real property are not easily resolved by bright-line tests. In Coastal Liquids , we acknowledged that "it is difficult to state a precise rule about what property can be separately assessed because of the multitude of possible circumstances and the hundreds of tax provisions that may govern them." Id. at 334 (quoting TEX. TAX CODE § 23.01(b) ). Coastal Liquids recognized that separate assessments are prohibited if the aspect of property being assessed cannot as a factual matter be separated from the rest of the property. In such a case, a separate assessment would necessarily result in double taxation. The examples we noted were separate assessments of a scenic view or access to a beach. Id. Here, as in Coastal Liquids , it is possible to separate the value of the raw surface acreage from the additional value attributable to a saltwater disposal well. As we held in Coastal Liquids , placing the underground facilities in a separate tax account does not presumptively amount to double taxation of the facilities. Id. at 334-35. As there is no presumption of double taxation, the question becomes whether dividing the property into separate accounts has actually resulted in double-counting the wells' value. The District insists there is no overlap in the accounts. Perhaps on remand the taxpayers can show otherwise, but the record before us does not establish double taxation.
At oral argument, counsel for the taxpayers repeatedly accused the District of "taxing a business." A business is not itself taxable real property, so the accusation, if true, would require judgment for the taxpayers. But we do not understand the District to have impermissibly conflated the taxpayers' saltwater disposal business with its real property. The wells add value to the property. The taxpayers' counsel attempted to avoid conceding this at oral argument, but he did not dispute it. The taxpayers' real complaint seems to be with the Legislature's decision to authorize the income method of appraising real property, which looks to "potential earnings capacity of the property" and "projections of future rent or income potential." TEX. TAX CODE § 23.012(a)(1), (a)(4). If employing the income method to appraise income-producing property was the same thing as "taxing a business," as the taxpayers suggest, then the income method would never be an acceptable appraisal method. But the Code authorizes appraisal districts to use the income method. Id. §§ 23.0101, .012. The District employed it here to estimate the portion of the property's market value attributable to the wells. If the District misapplied the income method or if its appraisal took into account elements of the taxpayers' businesses that are not fairly viewed as contributing to the market value of taxable property, the taxpayers may *101 demonstrate this on remand, assuming they preserved the issue.
By authorizing appraisal districts to employ the income method of appraisal, the Legislature determined that income produced on real property can in some cases be indicative of the property's market value. It is certainly not the case that the income generated on a piece of land always provides a fair basis for appraising the land itself. The Tax Code acknowledges as much by authorizing the income method only when it "is the most appropriate method to use to determine the market value of real property." Id. § 23.012(a). Where, as here, the economic use of the land is very closely tied to the land itself, we cannot conclude on this record that use of the income method to value the taxpayers' disposal wells was improper as a matter of law. Again, to the extent the taxpayers have preserved arguments that the District did not use "the most appropriate method to use to determine the market value of real property" or otherwise did not accurately appraise the taxpayer's property, this may be explored on remand.
IV. Conclusion
We affirm the court of appeals' judgment and remand the case to the trial court.

The record as a whole does not support the taxpayers' contention that the District viewed the disposal wells as consisting of nothing more than a "right to inject." While the District's appraisal consultant, Rodney Kret, described the interest as "the right to inject" in his deposition, he also described the wells as including the "subsurface formation" and justified the separate accounts for the injection wells by noting that the "subsurface and surface can be bought and sold separately in the state of Texas." Kret's employer, Pritchard & Abbot, Inc., prepared a summary of how it appraises saltwater disposal wells, explaining that its appraisals include the value of real property and tangible personal property: "A commercial saltwater disposal facility has both tangible personal property and real property appraisal considerations. The personal property is represented by all the physical equipment necessary for that facility to operate: the holding tanks, connecting lines, pumps, and wells, for example." The District's chief appraiser, Larry Hammonds, attested that the District set up separate accounts for the taxpayers' properties, with one account consisting of the "surface estates" and a second-the saltwater disposal facilities-"located under the surface" of "the surface estates." In its motion for summary judgment, the District claimed that it created separate accounts for the disposal wells consisting of a "subsurface estate" that was taxed separately from the "land's surface." The record does not establish that the District subjected the disposal wells to double taxation merely by assigning separate accounts to them. For the reasons discussed above, we do not presume in the absence of proof that double taxation occurred in these circumstances.